Brereton Estate.

Argued January 15, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*William J. Toy,* with him *John A. Smarsh,* for appellant.

*George S. Black,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 25, 1957:

Thomas J. Brereton died testate on February 3, 1929. He specifically devised and bequeathed to his wife his residence with contents and made several other specific and pecuniary bequests. The rest, residue and remainder of his estate he placed in trust, naming two of his sons, Seton L. and O'Hara D. Brereton, as executors and trustees. The will made provision for the appointment of a successor fiduciary in the event of the death or resignation of either of those nominated.

The will provided for the payment to the testator's widow for life of a sum certain from trust income and further bequeathed the income from the trust to his children or their widows, per capita, or to their descendants, per stirpes, with direction that, at the expiration of twenty-one years after the death of his last descendant, who had been living at the date of the testator's death, the trustees should divide the principal of the trust into a commensurate number of shares and distribute such shares of the corpus among his descendants, per stirpes.

Seton L. Brereton died shortly after qualifying as an executor; and the trust was administered from May 15, 1931, until July 24, 1942, by O'Hara D. Brereton as sole trustee. On the latter date, Francis M. Brereton, another son of the testator, having been elected co-trustee consonantly with the relevant provision of the will, qualified as such and assumed the discharge of his fiduciary duties. No account of the trust was

ever filed until March 27, 1954, which was subsequent to the date of O'Hara D. Brereton's death.

During the period when O'Hara D. Brereton was in sole control and management of the trust estate, he had advanced to himself against future distributable income that might become due him as one of the life beneficiaries of the trust the aggregate sum of $34,-422.48; and, by July 9, 1947, such advancements, less certain credits, constituted an overdraft by O'Hara D. Brereton of $24,689.45. The parties in interest, having discussed this situation, came to an agreement as to how O'Hara's indebtedness to the trust for the overdraft could be liquidated. The arrangement was committed to a writing which was signed and sealed on July 9, 1947, by the life beneficiaries of the trust income and the trustees of the trust.

At the audit of the surviving trustee's account, two of the three surviving children of the testator attempted to impress the share of the income, which under the terms of the will had been O'Hara's in his lifetime, with a charge for the amount of the overdraft against him unrefunded at his death. The auditor refused so to charge the trust income payable, after O'Hara's death, to his widow and children and awarded proportionate distribution to them of the income from the trust which had accrued after O'Hara's death. All that was before the auditor for report was the distribution of accumulated income as accounted for by the surviving trustee. Exceptions to the award were dismissed by the auditor whose report was confirmed by the Orphans' Court in a final decree from which these appeals were taken by Francis M. Brereton and Thomas L. Brereton, life beneficiaries of the Thomas J. Brereton trust.

As the appellants state in their brief, the lower court disposed of this case on two theories, viz., "(1)

that of estoppel or waiver by the writing of July 9, 1947, and . . . (2) that the improper overdraft from the O'Hara D. Brereton share is not chargeable against that share under the Will beyond the life of the income beneficiary." The court was right on both scores.

The agreement of July 9, 1947, between O'Hara and the other life tenants of the trust contains an express recital that "in their individual capacities [they were] all beneficiaries *for life* of a trust composed of the residuary estate of the testator" (Emphasis supplied). By the agreement, O'Hara assigned, transferred and set over absolutely and unconditionally to himself and Francis M. Brereton, as trustees under the will of Thomas J. Brereton, all of O'Hara's right, title and interest as one of the life beneficiaries to any of the income from the trust. It was also stipulated by the agreement that "This assignment shall be in full satisfaction of the obligation of [O'Hara] to repay to the Thomas J. Brereton estate said advancements." And, the agreement further provided that, upon the death of O'Hara, "any portion of the said advancements which has not been recovered by the estate of Thomas J. Brereton, deceased, by the operation of the foregoing assignment of the interest of [O'Hara] shall be marked cancelled and extinguished."

The appellants argue that the agreement of July 9, 1947, lacks consideration and is, therefore, ineffectual to discharge O'Hara D. Brereton's liability for the overdraft. The contention is apparently advanced on the idea that what O'Hara agreed to pay back to the trust was no more than his already existing legal liability. Cf. *Commonwealth Trust Company General Mortgage Investment Fund Case,* 357 Pa. 349, 355, 54 A. 2d 649. The suggestion is presently untenable. Without any litigation or further delay, the life beneficiaries got from O'Hara under the agreement a fixed de-

termination of the amount of his liability for the overdraft and a complete assignment of his right to a share of the income toward the liquidation of the overdraft. That was, indeed, a very valuable consideration. Had O'Hara put the other life beneficiaries to the necessity and expense of proving their case in court, he could have postponed the evil day and, thus, have continued to enjoy his testamentary share of the income much longer, possibly even to the time of his death five years later. Furthermore, this was a family agreement and family agreements are favored in the law: see *Fry v. Stetson*, 370 Pa. 132, 135, 87 A. 2d 305. Also, the agreement was under seal. And, "In Pennsylvania a seal is more than mere presumptive evidence of consideration. It imports consideration . . . ." *Killeen's Estate*, 310 Pa. 182, 187, 165 A. 34. See also *Central-Penn National Bank of Philadelphia v. Tinkler*, 351 Pa. 123, 126, 40 A. 2d 389; *Rynier Estate*, 347 Pa. 471, 473-474, 32 A. 2d 736. Moreover, the excepting life beneficiaries estopped themselves from questioning the validity of the agreement by accepting thereunder and thereafter directly from the trustees O'Hara's share of distributable income. Certainly, the effect of the release is not to be avoided on any such ground as alleged lack or want of consideration. Even had the agreement never been entered into, there would still be no basis for applying to O'Hara's overdraft the income from the trust that was his wife's and children's property after his death by virtue of the testator's will.

The authorities relied upon by the appellants are not in point. In *Stelmack v. Glen Alden Coal Company*, 339 Pa. 410, 14 A. 2d 127, the alleged contract was oral, and in *Hillcrest Foundation, Inc. v. McFeaters*, 332 Pa. 497, 2 A. 2d 775, which was a suit in equity, it does not appear that the contract was sealed.

But the appellants further contend that the trust

created by the testator was in effect four separate trusts (one for each of his children, their widows and respective descendants) and that therefore the trust for the life beneficiary who, as the trustee, had caused the overdraft of income at the expense of the other life beneficiaries should now be made to restore the deficiency. This contention is equally without merit.

To segregate into four separate trusts, in the manner now advocated by the appellants, the trust estate created by the testator, and charge the one for the benefit of the others, would of course effect a recoupment for the life beneficiaries of income dissipated by the trustee, but it would be at the expense of the widow and children of one of the testator's children (viz. O'Hara) in flagrant contravention of the terms of the will. The appellants' theory rests upon an obviously false premise. Of course, so far as the trustee-beneficiary, O'Hara D. Brereton, was concerned, "The other beneficiaries . . . [could] insist that his interest be impounded to make good the loss; they are entitled to a charge upon his interest to indemnify them for the loss": 2 Scott on Trusts, §257, p. 1455; Restatement, Trusts, §257. So much may be freely conceded. But, it is clear beyond quibble that the interest of O'Hara D. Brereton in the trust was a life interest in income which interest was extinguished by his death so that, upon his death, the right to a share of the income from the trust was no longer his and, therefore, not available for the payment of his debts. To avoid this necessary conclusion, the appellants allude to the present interest of O'Hara D. Brereton's widow and children in the trust as having passed to them through O'Hara whereas, as noted by both the auditor and the learned court below, O'Hara's widow and children took directly from the testator by way of substitution, as the will plainly directed.

As support for their contention, the appellants espouse the equitable doctrine of restitution, but they fail utterly to supply the proofs requisite for an application of the principle. While their loss is to be conceded, it by no means follows that O'Hara D. Brereton's widow and children profited by his unwarranted appropriation of trust income. And it is fundamental that, to entitle one to restitution, he must show not only that there was unjust enrichment but that the party sought to be charged had wrongfully secured a benefit or, passively, had received one which it would be unconscionable for him to retain: see Restatement, Restitution, §1; 77 C. J. S., 322, 323; 46 Am. Jur. 99. No such proof has been presented here.

. The court below correctly summarized the situation as follows: "The most that O'Hara D. Brereton ever had was a life estate in his fraction of the income from the testamentary trust created . . . [N]othing the other beneficiaries could do could impinge upon the grant which the will had made to persons who would succeed to the interest of O'Hara D. Brereton to a share of the income, after his death. Admittedly, Rebecca Brereton [O'Hara's widow] or her three children, were not parties to the agreement of July 9, 1947 and therefore they would not be bound by it any more than would the children of the other original beneficiaries. Although the exceptants [appellants] make a suggestion that the monies which O'Hara D. Brereton received from the trust fell into the hands of or benefited his wife or children, this is far from being an allegation or proof tracing those funds concretely into the hands of his widow or children or any other person."

There is no need to prolong the discussion. The agreement between O'Hara D. Brereton and the other life beneficiaries of the trust, who alone had an interest in the income which O'Hara as trustee had wrong-

fully appropriated to his own use, so clearly spells out the obvious limitation of O'Hara's lifetime interest in the trust as to cause one to wonder how the exceptants to the auditor's report ever could have thought that there was a trace of merit in their contention or, after the readily understandable exposition of the legal situation by the learned court below, could have had faith in an appeal from the decree.

Decree affirmed at appellants' costs.