588 A.2d 43

BURGETTSTOWN–SMITH TOWNSHIP
JOINT SEWAGE AUTHORITY

v.

LANGELOTH TOWNSITE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 5, 1990.

Filed March 20, 1991.

Joseph R. Brendel, Pittsburgh, for appellant.

Robert N. Clarke, Washington, for appellee.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This is an appeal from a judgment entered in the Court of Common Pleas of Washington County in favor of Burgettstown–Smith Township Joint Sewage Authority (the appellee) and against Langeloth Townsite Company (the appellant) in the amount of $10,821.19. While both parties have presented compelling arguments, we are persuaded that Langeloth's position here is the correct one. Thus, we reverse and vacate the judgment against it.

In material respect, both Langeloth and the Sewage Authority offer similar versions of the statement of this case. We adopt Langeloth's recitation of the factual and procedural history for purposes of this appeal.

This action commenced on or about July 1, 1987, with the filing of a Complaint upon a cause of action for unjust enrichment by appellee Burgettstown–Smith Township Joint Sewage Authority (the "Authority") against appellant Langeloth Townsite Company ("Langeloth"). The Authority's Complaint alleged that Langeloth was responsible for a portion of the costs incurred by the Authority in complying with a Pennsylvania Department of Environmental Resources ("DER") directive requiring the Authority to conduct studies and prepare plans with respect to the sewage systems within its jurisdiction. The Authority demanded judgment against Langeloth in the amount of $10,700.00 plus interest and costs.

Following the filing of Langeloth's Answer to the Authority's Complaint, a non-jury trial was held on November 9, 1988, before the Honorable Thomas J. Terputac. At the conclusion of the non-jury trial, Judge Terputac issued an Order dated November 9, 1988, requiring the Authority to submit its Memorandum of Law within twenty (20) days and requiring Langeloth to submit its Memorandum of Law ten (10) days after receipt of the Authority's Memo-

randum of Law. Langeloth received the Authority's Memorandum of Law on December 19, 1988, and Langeloth filed its Memorandum of Law on December 29, 1988. By Memorandum Opinion and Decision dated January 25, 1989 ..., the Court, by the Honorable Thomas J. Terputac, found in favor of the Authority and ordered Langeloth to pay the Authority in damages the sum of $9,074.82 plus the costs of an application fee which the Authority allegedly filed with the DER. On February 6, 1989, Langeloth filed its Motion for Post–Trial Relief and requested that the Motion be heard by the Court *en banc.* The Honorable Thomas D. Gladden, John F. Bell, and Thomas J. Terputac heard argument on the Motion for Post–Trial Relief on November 27, 1989. On February 13, 1990, the Court *en banc* issued its Opinion and Order ..., dismissing the motion and setting the amount of damages at $10,821.19. Judgment was entered against Langeloth on June 17, 1990. Notice of appeal was filed with the lower court on June 20, 1990.

Appellant's brief, at 4–5. Langeloth has preserved three issues for our review:

1. Whether [it] has been unjustly enriched by [the Sewage Authority's] compliance with the Department of Environmental Resources' directives.

2. Whether [its] equal protection guarantees under the United States Constitution have been violated by compelling [it] to reimburse [the Sewage Authority] for an alleged proportional share of the cost of the study.

3. Whether [its] alleged portion of the cost of the study was proved with a reasonable degree of certainty.

Appellant's brief, at 3. Because we agree with Langeloth's assertion that the trial court erred in determining that Langeloth was unjustly enriched as a result of the Sewage Authority's study, we find it unnecessary to address Langeloth's two remaining claims. *See State Farm Mutual Automobile Insurance Co. v. Jim Bowe & Sons, Inc.,* 372 Pa.Super. 186, 189, 539 A.2d 391, 392 (1988) ("[o]n review of a case tried by a judge sitting without a jury, we must

accept the factual findings of the trial court, although we are not bound by the trial court's legal conclusions drawn from those facts."); *see also Torchia on Behalf of Torchia v. Torchia,* 346 Pa.Super. 229, 499 A.2d 581 (1985).

■ Before we embark on our discussion, we note, sua sponte, that this appeal is properly before us. Although this case involves a suit by the Sewage Authority against a landowner, the gravaman of the Sewage Authority's complaint was that Langeloth was unjustly enriched as a result of an engineering study conducted by the Sewage Authority pursuant to a DER directive. Thus, since we are not asked to interpret, apply or enforce a statute regulating the affairs of a political subdivision, but rather are asked to consider an appeal based on the theory of unjust enrichment, we see no reason to transfer this case to Commonwealth Court. *See* 42 Pa.C.S. § 762(a)(4).

■ In *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986), this Court set forth the elements of unjust enrichment. Neither party challenges the legal proposition contained in *Wolf*; to wit:

> [The] [e]ssential elements of "unjust enrichment" are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

*Wolf,* 356 Pa.Super. at 374, 514 A.2d at 905–06. As the en banc court in the instant case further notes,

> The doctrine of unjust enrichment is equitable in nature.... This doctrine permits recovery where the claimant [*can* ] show that a benefit was wrongfully secured or passively received, and that it would be unconscionable for the party receiving the benefit to retain it without payment. *State Farm Mutual Automobile Insurance Co. v. Jim Bowe & Sons, Inc., et al.,* 372 Pa.Super. 186, 539 A.2d 391, 393 (1988) citing *Meehan v. Cheltenham Twp.,* 410 Pa. 446, 189 A.2d 593 (1963) and *Roman Mosaic and Tile, Inc. v. Vollrath,* 226 Pa.Super. 215, 218,

313 A.2d 305, 307 (1973). The most significant require-
ment for recovery is that the enrichment is unjust.
*Myers–Macomber Engineers v. M.L.W. Construction
Corp.*, 271 Pa.Super. 484, 414 A.2d 357, 360 (1979). We
must focus not on the intention of the parties but on the
extent [to which] the enrichment is unjust. *Gee v.
Eberle*, 279 Pa.Super. 101, 420 A.2d 1050 (1980). A
showing of wrongdoing or wrongful intent on the part of
the benefitted party is not necessary. *Id.* [420 A.2d] at
1059.

En banc opinion, February 13, 1990, at 4 (emphasis added).
*See State Farm v. Jim Bowe & Sons, supra.*

We have thoroughly reviewed the record in the instant
case. It is clear to us that both parties as well as the trial
court and the en banc court have considered the record as
well. Beyond dispute is the fact that the DER directed the
Sewage Authority to conduct a study of the sewer system
within its jurisdiction and to prepare plans to ameliorate any
conditions that violated The Clean Streams Law, 35 P.S.
§ 691.1, *et seq.* The DER's authority to compel the study
was conferred by statute, specifically, Section 203 of The
Clean Streams Law, 35 P.S. § 691.203.

At trial, it was admitted that the DER had no authority
over Langeloth, inasmuch as Section 203 relates to munici-
palities. *See* 35 P.S. § 691.203. *See also* N.T., November
9, 1988, at 20. Additionally, it was noted that The Clean
Streams Law contains no provision which would allow a
municipality to assess the costs of DER directed studies
against private landowners. N.T., at 20–21. Finally, as
Langeloth observes, the DER representative who testified
at trial stated that the Sewage Authority was ultimately
responsible for conducting the studies. N.T., at 22. *See
also id.* at 27; *see id.* at 43 (the project manager testified:
Q. "As I understand your testimony when you started, the
bill or the statement for this project was the ultimate
responsibility of the Authority. Is that correct?" A.
"Yes."). *See* Exhibit H.

Before we comment further upon the facts of this case, we feel it important to note that the issue here is limited. Our sole concern is whether Langeloth was unjustly enriched by the Sewage Authority's work in *conducting the study*. We find no evidence in the record to indicate that any *remedial actions* have been pursued as a result of the study. *See* N.T., at 52.

Conversely, we find that it was the Sewage Authority's *responsibility* to evaluate the sewage system. The study was mandated by the DER and the Sewage Authority was awarded grants to cover 75% of the costs incurred in conducting the study. N.T., at 7, 27. We must conclude that regardless of whether Langeloth would have been obligated to perform a similar study itself had a different provision of The Clean Streams Law been invoked, that issue is not before us. Similarly, we decline to speculate whether the theory of unjust enrichment would apply if the recommendations contained in the Sewage Authority's plan had been effectuated. *See* N.T., at 52 (the project manager stated, "Well, the study is in fact just that; the project hasn't been built yet."). Our holding is narrow. On the facts before us, we cannot say that Langeloth was unjustly enriched as the result of a study that was undertaken by the Sewage Authority and which was ordered by the DER. *See Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963).

This is not to imply that Langeloth (or any other property owner, for that matter) should not be responsible for compliance with The Clean Streams Law. *See Tamaqua Borough v. Rush Township Sewer Authority*, 85 Pa.Commw. 421, 482 A.2d 1167 (1984) (briefly discusses 35 P.S. §§ 691.-201; 691.202). However, it appears that the study merely uncovered the violations and suggested effective remedies. The Sewage Authority did not expend monies to actually fix Langeloth's sewage systems. *See* N.T., at 71. Thus, although Langeloth may have received a benefit in that it is now relieved of the burden of conducting an independent study, Langeloth was not under the authority of the DER.

Moreover, although Langeloth may be more informed as a result of the Sewage Authority's findings, Langeloth was merely the fortunate recipient of an analysis that the Sewage Authority was already required to pursue. *See Meehan v. Cheltenham Township*, 410 Pa. 446, 450, 189 A.2d 593, 596 (1963) ("[t]he mere fact that one party benefits from the act of another is not of itself sufficient to justify restitution."). *See also Torchia on Behalf of Torchia v. Torchia*, 346 Pa.Super. 229, 499 A.2d 581 (1985) (to sustain a claim of unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be *unconscionable* for the party to retain) (emphasis added).

The en banc court stressed that at trial, a DER representative testified "that after reviewing the record and the study, the defendant was found to be in violation of The Clean Streams Act.... Specifically, the system currently in use on the defendant's land does not comply with DER standards. Consequently, it appears as though the defendant received a benefit as a result of the plaintiff's compliance with the DER mandate and the subsequent procedures undertaken by the plaintiff to remedy the defendant's situation." En banc opinion, February 13, 1990, at 4.[1] As we have stated, we must refrain from "punishing" Langeloth under the theory of unjust enrichment. Pursuant to the provisions of The Clean Streams Law, once Langeloth was found to have been in violation of its provisions, the DER could have pursued other courses of action to correct the deviations. *See* 35 P.S. § 691.316. *See* 35 P.S. § 691.202. *See* 35 P.S. §§ 691.5; 691.5(b)(8). *See also* N.T., at 68–69. *Cf. A.H. Grove & Sons, Inc. v. Commonwealth, DER*, 70 Pa.Commw. 34, 452 A.2d 586 (1982) (discussing 35 P.S. § 691.316). However, we decline to assess costs against

1. The en banc court does not explain the "subsequent procedures" to which it refers. We assume that it is alluding to the engineering studies or field work performed as part of the study. *See* Exhibit J; N.T., at 30. *See* N.T., at 33 (the project manager testified, "[t]hat amount ... represents the amount of $29,000.00, which is the estimated engineering cost associated with preparing this study."); 34–35.

Langeloth where the Sewage Authority was acting not independently, but pursuant to a DER mandate.[2] There is more than sufficient support in the record for our conclusions. Taken as a whole, the trial transcript, the exhibits and the briefs filed by both parties convince us that the doctrine of unjust enrichment was improperly applied in this case. *Cf. Summerhill Borough v. Commonwealth, DER,* 34 Pa.Commw. 574, 579–580, 383 A.2d 1320, 1323 (1978) ("[e]conomic hardship and losses to municipalities attendant on DER regionalization orders are not valid bases for challenge of such orders.").

As a final note, we acknowledge Chief Justice Bell's concurring statement in *Meehan v. Cheltenham Township,* 410 Pa. 446, 189 A.2d 593 (1963). Therein, he wrote

> I have several times expressed my strong opposition to the unjust enrichment doctrine and its adoption in Pennsylvania. The adoption of such a doctrine would, in my judgment, create considerable chaos in the law and greatly increase litigation. *Equitably and morally plaintiffs are certainly entitled to recover in this case, but I regret to say that they have no legally justifiable claim.* I see no reason, however, why plaintiffs' equitable and moral claim should not be paid by the township pursuant to a proper authorizing ordinance or resolution.

*Id.,* 410 Pa. at 451–452, 189 A.2d at 596 (emphasis added). Finding that the Sewage Authority has not sustained a claim in unjust enrichment, we reverse the trial court's and

2. The en banc court also assigned great weight to the fact that Langeloth had notice of the Sewage Authority's endeavors because there was publicity about the ongoing operations of the Sewage Authority. En banc opinion, February 13, 1990, at 4–5. Additionally, public meetings were held to inform the various residents about the Sewage Authority's actions. While we are satisfied that Mr. Martin's testimony was credible to the factfinders, we nevertheless conclude that this evidence is irrelevant to the instant issue. Public meetings and advertisements were *required* by the DER. *See* N.T., at 58. It seems only logical that those individuals who would be affected by a study which included possible field work in their houses would be informed of the undertaking. This has nothing to do with who is financing the costs.

the en banc court's decision and vacate the judgment against Langeloth.[3]

Reversed.

**3.** While the Sewage Authority asserts in its Complaint that it incurred additional expenses in the amount of $3,450.00 for sewage implementation, repair, review, reconstruction and modification of Langeloth's systems, this claim seems to have been abandoned on appeal.