654 A.2d 1093

**Allen L. FEINGOLD, Appellant,**

**v.**

**Barry PUCELLO, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1994.

Filed Jan. 13, 1995.

Reargument Denied March 22, 1995.

510

Allen L. Feingold, Philadelphia, for appellant.

Kenneth S. Cooper, Philadelphia, for appellee.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

OLSZEWSKI, Judge:

On February 2, 1979, Barry Pucello was involved in a motor vehicle accident. One of Pucello's co-workers knew Allen Feingold, a personal injury attorney, and asked if he could give Feingold Pucello's name. Pucello agreed.

Feingold called Pucello that very evening. Pucello explained that he wasn't feeling well, having just been in an accident, and would call back tomorrow. Feingold recommended a doctor he knew, and set up an appointment for

Pucello. The next day, the two discussed the possibility of Feingold's representing Pucello. Pucello gave Feingold some basic information, but did not discuss fee arrangements.

Feingold then went to work on the case. He inspected the accident site, took pictures, obtained the police report, and secured an admission of liability from the other driver. He had still never met with Pucello in person. Towards the end of February, Feingold mailed a formal contingency fee agreement to Pucello, which called for a 50/50 split of the recovery, after costs. Pucello balked at the high fee, and found other counsel. Pucello told Feingold he could keep any pictures, reports, and admissions; Feingold never forwarded the file.

About a year later, Feingold sued Pucello in *quantum meruit*. A board of arbitrators unanimously found for Pucello. Feingold appealed to the Philadelphia Court of Common Pleas. After much procedural delay, the parties had a *de novo* bench trial.[1] The trial court found that while Feingold might have had a *quantum meruit* claim if Pucello retained him and then fired him midway through the case, here the parties never even entered into an attorney-client relationship. The trial court thus found for Pucello, and Feingold appeals.

Feingold argues that Pucello orally agreed to have Feingold represent him, so he is entitled to be paid for the work he did even though Pucello never signed a written fee agreement. The trial court found that by working on the case without the agreement, Feingold proceeded at his own risk. Since there was never a meeting of the minds regarding representation, there was no contract and no obligation to reimburse for his work on the case. Feingold acknowledges the absence of an express contract, but argues that the circumstances imply a contract to support quantum meruit recovery. He contends that Pucello enjoyed the benefits of his efforts despite rejecting his work product: Feingold got Pucello a doctor's appointment, and once the tortfeasor admitted liability, he was unlikely to deny it later.

---

1. Pucello had since moved to California, but was represented by counsel at the trial.

*Quantum meruit* is an equitable remedy. *Dept. of Environmental Resources v. Winn,* 142 Pa.Cmwlth. 375, 597 A.2d 281, 284 n. 3 (1991), *alloc. denied* 529 Pa. 654, 602 A.2d 863 (1992). We therefore begin our analysis by noting that Feingold comes to this court with hands smudged by the ink which should have been used to sign his fee agreement. Pa.R.C.P. 202, now rescinded, was in effect in the late 1970's. This rule required attorneys to put contingency fee agreements in writing. Pa.R.C.P. 202, 42 Pa.C.S.A. The rule was rescinded because it duplicated Rule 1.5(b) of the Rules of Professional Conduct, which requires attorneys to state their contingency fee in writing "before, or within a reasonable time after commencing representation." As the trial court aptly noted, the whole point of these rules is to avoid precisely the sort of situation Feingold brings to the court. Opinion 3/29/94 at 8.

Secondly, Feingold's proposed contingency fee of 50% of the recovery, after costs, is breathtakingly high. It struck the trial court as unethical. N.T. 7/13/88 at 21. By pricing his services at the top end of the spectrum, Feingold should expect some prospective clients to balk. This makes stating the fee agreement up front all the more important. Contingency fee practice used to be badly abused by practitioners who would assure their injured clients not to worry—the case was in good hands. When the relationship had passed the point of no return and the client's reliance was entrenched, then the attorney mentioned what his hefty percentage of the take would be. The only way to counter this abuse was to require that attorneys state contingency fees up front and in writing. This is also why the requirement evolved from a procedural rule into an ethical rule. We think Feingold's abject failure to comply with this rule precludes any equitable recovery.

Even without these equitable considerations, Feingold's claim still fails on its merits. In rejecting the proposed fee agreement, Pucello told Feingold to keep his work-product. Thus Feingold did not confer any tangible benefit on Pucello. Feingold argues that having admitted liability to Feingold, the

tortfeasor was constrained from altering his story, which facilitated settlement. If so, then Feingold's claim would more properly lie against Pucello's attorney, who testified that he still could have won the case without Feingold's preliminary work. *Id.* at 32.[2] Thus, Pucello would have gotten his recovery either way; it is only Pucello's attorney whose job might have been facilitated by Feingold's services. *See Johnson v. Stein,* 254 Pa.Super. 41, 385 A.2d 514 (1978).

Feingold likens himself to the surgeon who may render emergency medical treatment first, and then ask for payment later. Appellant's reply brief at 1. Pucello's claim had a two-year statute of limitation, and was for the sole purpose of obtaining money, not saving his life. Feingold could have held off working on the case long enough to properly commence the relationship by stating his contingency fee up front, and should have under our procedural and ethical rules.[3] When Pucello learned of Feingold's exorbitant rates, he understandably balked and told Feingold to keep his file. Feingold's unclean hands and Pucello's rejection of his services clearly preclude any *quantum meruit* recovery.

Order affirmed.

DEL SOLE, J., concurs in the result.

BECK, J., files a concurring opinion.

BECK, Judge, concurring.

I concur in the result reached by my colleague. I do so, however, on the narrow basis that appellant has failed to make out a claim in quasi-contract that would entitle him to restitution from appellees.

Appellant has conceded that the facts in this case do not support a finding that a contract for legal services was reached between him and appellee Pucello. His only claim on

---

**2.** Pucello's attorney also offered to reimburse Feingold for his out-of-pocket expenses, though not for his time. *Id.*

**3.** In fact, both old Pa.R.C.P. 202 and ethics rule 1.5(b) are mandatory, not aspirational.

appeal is that the trial court erred in denying his *quantum meruit* claim on the basis that there had been no meeting of the minds between the parties. In this appellant is correct, for

> "[u]nlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 290, 259 A.2d 443, 449 (1969), quoting Restatement (Second) of Contracts, § 5, comment b. at 24. "Quasi contracts may be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention." *Schott v. Westinghouse Electric Corporation, supra* at 290–91, 259 A.2d at 449.

*Martin v. Little, Brown and Co.,* 304 Pa.Super. 424, 430–431, 450 A.2d 984, 988 (1981). However, this error by the trial court does not warrant reversal of its judgment because it is clear that the facts of this case cannot, as a matter of law, support a *quantum meruit* recovery by appellant.

A cause of action in quasi-contract for *quantum meruit,* a form of restitution, is made out where one person has been unjustly enriched at the expense of another. *Martin v. Little, Brown and Co., supra* (citing *DeGasperi v. Valicenti,* 198 Pa.Super. 455, 457, 181 A.2d 862, 864 (1962)).

> The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986), *overruled on other grounds, Van Buskirk v. Van Buskirk,* 527 Pa. 218, 590 A.2d 4 (1991); *see also Burgettstown–Smith Township Joint Sewage Authority v. Langeloth Townsite Co.,* 403 Pa.Super. 84, 588 A.2d 43 (1991).

*Styer v. Hugo,* 422 Pa.Super. 262, 267, 619 A.2d 347 (1993), *affirmed* 535 Pa. 610, 637 A.2d 276 (1994). The most significant element of the doctrine is whether the enrichment of the

defendant is unjust. *Id.* Thus to sustain a claim of unjust enrichment, it must be shown "that a person wrongly secured or passively received a benefit that it would be unconscionable to retain" without making payment. *Martin v. Little, Brown and Co., supra* (citing *Brereton's Estate,* 388 Pa. 206, 212, 130 A.2d 453, 457 (1957); *Crossgates Realty, Inc. v. Moore,* 279 Pa.Super. 247, 420 A.2d 1125, 1127–28 (1980); *Roman Mosaic & Tile Co., Inc. v. Vollrath,* 226 Pa.Super. 215, 218, 313 A.2d 305, 307 (1973).

The facts of this case simply cannot support a finding that Pucello was unjustly enriched by appellant Feingold's services. By refusing to accept Feingold's files containing his work product, Pucello affirmatively rejected any direct benefit from Feingold's services. Thus it is clear that acceptance and retention of the benefits of Feingold's services, a necessary element of the claim of unjust enrichment, has not been established.

Appellant argues that despite Pucello's refusal to accept his work product, Pucello nevertheless passively received benefits from Feingold's services. He points to two specific benefits which he contends were received by Pucello. First, he asserts that Pucello's ability to obtain an appointment with a conveniently located physician on short notice was a result of Feingold's established relationships with the physician. Second, Feingold asserts that settlement of Pucello's case was facilitated because Feingold obtained a written admission of liability from the driver of the car which struck Pucello, and the driver was constrained from denying liability when he was later interviewed by Pucello's counsel. I cannot agree that either of these alleged "benefits," even if received by Pucello, was sufficient to establish that Pucello was unjustly enriched.

Feingold's assistance in arranging an appointment with a physician is not the type of service for which one would normally expect to pay, nor is it a professional legal service which has a value because of the professional expertise required to render it. Accordingly, these services did not confer upon Pucello a benefit which it would be unconscionable to retain without making restitution. Similarly, Feingold's claim

that settlement of Pucello's case was facilitated by the admissions made by the alleged tortfeasor to Feingold is entirely speculative. Because Feingold introduced no competent evidence to support his assertion that his work on the case had the effect he alleges, the record cannot support his claim that his services conferred a benefit upon Pucello.

Appellant's claim for *quantum meruit* cannot be sustained in the absence of a finding of unjust enrichment which, in equity, requires restitution. Because the record in this matter will not support such a finding, his *quantum meruit* claim was properly denied. I would therefore affirm the trial court's order.