## Stone & Edwards Insurance Agency Inc. v. Stumpf

C.P. of Dauphin County, no. 1882 S 1994.

*Kathleen D. Yaninek,* for plaintiff.
*Stephen C. Nudel* and *Tracy L. McNamara,* for defendant.

*EN BANC,* KLEINFELTER, LEWIS AND CLARK, *JJ.*

KLEINFELTER, *J.,* July 3, 1996—The present matter before the court is defendant Warren W. Stumpf's preliminary objections in the nature of demurrers to the amended complaint of plaintiff Stone & Edwards Insurance Agency Inc. and Stone & Edwards' preliminary objections to Stumpf's objections. According to the pleadings, Stumpf was an insurance agent and broker for Stone & Edwards. He left that position in June or July 1991.

Plaintiff filed the initial complaint on May 13, 1994, alleging that Stumpf breached an employment agreement. The amended complaint was filed on September 15, 1995. There, Stone & Edwards claims breach of contract (Count I), breach of oral contract (Count II), breach of restrictive covenant (Count III), and unjust enrichment (Count IV). Stumpf filed preliminary objections on October 25, 1995, and Stone & Edwards

filed its objections on December 4, 1995. All objections were argued before an en banc court in March 1996.

We begin with the two objections of Stone & Edwards. Plaintiff first contends that because Stumpf filed his objections 20 days late, they should be stricken. In its second objection Stone & Edwards maintains that the objections should be dismissed because defendant breached an agreement to file an answer and the untimely filing of the preliminary objections prejudices plaintiff's case. We will deny both objections.

Pursuant to Pa.R.C.P. 1026 the court may liberally construe the Rules of Civil Procedure if such construction does not substantially affect the rights of the parties. In this case, while Pa.R.C.P. 1026 states that a responsive pleading should be filed in 20 days, we see no basis for strict enforcement of the rule. Stone & Edwards claims that the untimely filing is prejudicial to its case because defendant's delay is yet another protraction of the litigation. Plaintiff, however, has not alleged any material facts that go towards demonstrating Stumpf's efforts to "prolong this litigation."[1] In addition, we are not persuaded that a 20-day delay has substantially affected plaintiff's ability to go forward effectively with its case. See *Weaver v. Martin*, 440 Pa. Super. 185, 192, 655 A.2d 180, 183 (1995). ("Prejudice results when an opposing party's delay causes a party 'any substantial diminution [in their] ability to present factual

1. In its outline of the procedural background, plaintiff describes previous pleadings filed by defendant wherein he objected to the complaint, made a counterclaim (to which plaintiff objected), and opposed plaintiff's petition to amend the original complaint. Plaintiff does not contend that defendant's responses were either frivolous or untimely, however. Accordingly, we do not find any substantial basis for alleging that defendant's pleadings were intended merely to protract the litigation.

information in the event of trial.' ") Therefore, the objection is overruled.

Stone & Edwards' other objection is also without merit. Here, plaintiff contends that Stumpf breached an agreement between the parties wherein Stone & Edwards granted Stumpf an extension to file an "answer" to the amended complaint. By filing preliminary objections instead, Stone & Edwards argues, Stumpf violated the agreement and the objections should be dismissed.

We do not find any evidence of such an agreement. Plaintiff's attempt to document it with a letter written by its own counsel to defendant's counsel is clearly insufficient evidence. Dated October 18, 1995, the letter refers to a telephone conversation between the two attorneys several days earlier. It states that defendant's counsel indicated that he would be filing an "answer to plaintiff's amended complaint within the next couple of days." The letter then points out that "your answer ha[s] not yet been filed" and concludes with a warning that a "10-day notice to take default" will be filed if no response is received by "Monday, October 23, 1995." Thus, the letter does not provide evidence of an agreement, and, accordingly, we overrule the objection.

We now turn to Stumpf's demurrers to the claims of breach of restrictive covenant (Count III) and unjust enrichment (Count IV). In a demurrer the moving party "admits every well-pleaded fact and all inferences reasonably deducible therefrom." *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 321-22, 612 A.2d 500, 502 (1992). The court must then determine "whether, on the facts averred, the law says with certainty that no recovery is possible." If the court finds that doubt exists regarding the legal sufficiency of the allegations, the issue will be resolved in favor

of the nonmoving party. *Scarpitti v. Weborg,* 530 Pa. 366, 369, 609 A.2d 147, 148 (1992).

In demurring to the allegation that he breached the restrictive covenant in the employment agreement, Stumpf contends that the complaint does not allege facts sufficient to support such a claim. Specifically, Stumpf points out that Stone & Edwards only alleges that he left plaintiff's firm and, subsequently, solicited the business of his customers at Stone & Edwards. Stumpf then argues that the plaintiff has not made any allegations to show that his conduct met the condition precedent which triggers the "restrictive covenant" (section 6) of the employment agreement. The covenant begins with the following statement:

*"In the event producer (Stumpf) sells his book[2] to employer,* producer shall not for a period of three years after termination of his employment, directly or indirectly, enter into or engage in the same or similar business to that operated by house by either solicitation or acceptance of any form of insurance business or at any time in the two years prior to his termination, of either the house and its affiliates or any agency through which the house and its affiliates places the insurance business sold by the producer." (emphasis added)

Stumpf maintains that because Stone & Edwards has not alleged that Stumpf sold his book to the "employer," the plaintiff cannot allege breach of restrictive covenant. Therefore, Stumpf concludes, the count should be dismissed. We agree.

We find no merit in Stone & Edwards' opposing argument. Plaintiff claims that the aforementioned con-

---

2. The "book" is the agent's "book of business" which generates commissions from the sale of insurance contracts.

ditional phrase is made in relation to "the options it offers in the event that Stumpf (the producer) left the employ of the plaintiff." To support this argument plaintiff claims that the defendant's breach of the restrictive covenant arises from his violation of the following terms in the "compensation" section of the agreement (section 5):

"House agrees with producer that all new business written by producer and placed with the house shall be owned 50 percent by producer and 50 percent owned by the house. In the event producer wishes to leave, house agrees to sell producer its 50 percent share of the business for two times the annual commission produced by its share over the past 12 months immediately preceding the month in which the notice is given to the house.

"In the event producer wishes to sell his 50 percent share of the business, house agrees to purchase said share for two times the annual commission produced by his share over the past 12 months immediately preceding the month in which the notice is given to the house."

Stone & Edwards argues that Stumpf breached the above terms because he has not complied with either option, *i.e.,* bought plaintiff's share of the business or sold his share to Stone & Edwards. Accordingly, plaintiff asserts, defendant's wrongdoing should preclude his contending that the restrictive covenant does not apply on grounds that the condition precedent had not been met.[3]

---

3. Stone & Edwards' attorney contends that the *in pari delicto* doctrine is "appropriate" here, arguing that the defendant "should not be permitted to benefit from his own wrongdoing." We disagree. Invoked in cases where both parties appear equally culpable, this doctrine would not appear applicable to the argument raised by plaintiff.

The problem with Stone & Edwards' argument is in its analysis of the obligatory terms of the buy-sell agreement. Under the plain terms of the option, only Stone & Edwards was obligated to purchase Stumpf's share of the business—if Stumpf wanted to sell:

*"In the event* producer wishes to *sell* his 50 percent share of the business, *house agrees to purchase . . . ."*

There is no concomitant obligation to purchase the 50 percent share by Stumpf but only an obligation to sell by Stone & Edwards:

*"In the event* producer wishes to leave, *house agrees to sell . . . ."*

As the agreement was drafted, Stumpf had no obligation to sell his share if he did not "wish" to do so. He also had no obligation to buy Stone & Edwards' share.[4] To use plaintiff's own words in its argument, these paragraphs contain "options" open to the parties.

It is well settled that when determining the meaning of a contract, the court must "ascertain and give effect to the parties' intent." *Dieter v. Fidelcor Inc.,* 441 Pa. Super. 215, 219, 657 A.2d 27, 29 (1995). (citations omitted) If "technical terminology" is absent "we give the words used in the agreement their plain and ordinary meaning." *Id.* (citations omitted) As our discussion above shows, the first part of the section merely states that the "house agrees to sell its 50 percent share" if the producer "wishes to leave." There is no reciprocal phrase wherein the producer agrees to buy the house's share. The second part does not even mention the employee's leaving as condition precedent to his buying the book from the employer. The absence of this con-

---

4. Paragraph 10 of the amended complaint alleges that Stone & Edwards has offered to sell its 50 percent share of the business to Stumpf.

dition and of the mandatory language in general must also be considered in comparison to the language contained in the final paragraph of the "compensation" section. There, we find that "house and producer agree" to certain terms regarding payment for purchase of the book. Given the use of those words in the final paragraph, we must assume that, if it was also the parties' intent to require that the producer either buy the book or sell it to the house upon termination, those words or similar ones would have been employed to express that intent. Without the words to bind Stumpf to such an agreement, we, accordingly, can find no breach of the terms in the "compensation" section.

Further, we find no basis for holding that Stumpf breached the terms of the "restrictive covenant" section (section 6) of the agreement. This section begins with a clear condition precedent:

*"In the event producer sells* his book to employer, producer shall not for a period of three years . . . enter into or engage in the same or similar business . . . ."

A plain interpretation of section 6 compels a finding that the condition that triggers the restraint of competition was not termination of employment. Rather, it was the selling of the book to Stone & Edwards, and this condition was not alleged. In the count claiming breach of restrictive covenant, Stone & Edwards alleges that the defendant left the firm, and that "subsequent to the termination of his employment," he held "himself out as continuing in the employ of plaintiff, [and] contacted customers of the plaintiff in an effort to have them procure new or additional policies of insurance." (Complaint—para. 23.) Stone & Edwards further maintains that Stumpf, "during the course of his new employment," continues to attempt to lure plaintiff's customers away. (Complaint—para. 25.) While these

allegations go towards demonstrating that Stumpf competed with Stone & Edwards after he left plaintiff's firm, our reading of the restrictive covenant paragraph indicates that his conduct would only constitute a breach if he also was alleged to have sold his book to Stone & Edwards.

The courts have held that a restrictive covenant in an employment agreement "should be strictly construed." *Harry Blackwood Inc. v. Caputo,* 290 Pa. Super. 140, 142, 434 A.2d 169, 171 (1981), quoting *Hayes v. Altman,* 438 Pa. 451, 454, 266 A.2d 269, 271 (1970). In *Hayes* our Supreme Court reversed the lower court's granting a mandatory injunction requiring specific performance of a restrictive covenant. The covenant prevented an employee from competing with his former employer for a period of three years after leaving his employment. The injunction was to begin on a date that was over six years after appellant/employee had left the business. The appellant/employee appealed based on the argument that the lower court could not impose such an injunction because "the time for performance prescribed in that covenant had expired." *Hayes, supra* at 454, 266 A.2d at 271.

In its review the *Hayes* court pointed out that restricted covenants in an employment agreement "are enforced by the courts as reasonably necessary for the protection of the employer." On the other hand, the court reasoned, "[a] general covenant not to compete . . . imposes a greater hardship upon an employe than upon a seller of business." The covenant can prevent "[a]n employe . . . from practicing his trade or skill," and finding a new occupation may be extremely difficult. "[H]ence, his ability to earn a livelihood is seriously impaired." *Id.* at 454-55, 266 A.2d at 271. The *Hayes* court thus ruled that, "[i]n view of this greater hardship imposed

upon an employe, general covenants not to compete which are ancillary to employment will be subjected to a more stringent test of reasonableness than that which is applied to such restrictive covenants ancillary to the sale of business." *Id.* at 455, 266 A.2d at 271. The *Hayes* court then held that "[a]n injunction will not be granted to enforce a restrictive covenant when the restrictive period has by its terms expired." *Id.*

In applying the *Hayes* ruling, *Caputo* affirmed the lower court's holding in favor of defendant/employee. The lower court strictly construed the following restrictive covenant:

"Caputo agrees that, in case his employment is terminated for any cause, whether voluntary or otherwise, he will not, thereafter, for a period of five years after leaving the employment, for himself or in behalf of any other person, partnership or corporation, *directly or indirectly, solicit, divert or take away, any of the clients, business or patronage of such clients, as were or had been served by the agent as of the date of termination of his employment hereunder."* *Caputo, supra* at 142, 434 A.2d at 170. (emphasis in original)

Appellant/employer argued that the covenant precluded appellee/employee "from any writing of insurance for any of appellant's former customers." The *Caputo* court, on the other hand, gave a literal interpretation to the words in the covenant. The court found that "the covenant in question does not proscribe the selling or writing of insurance; it prohibits *only* the soliciting, diverting or taking away of such business." *Id.* at 143, 434 A.2d at 170. (emphasis added)

In this case, we find that the parties' intent in the restrictive covenant provision was to prevent the employee from luring customers away from Stone & Edwards after the latter purchased his book. Although

the parties may have surmised that termination of employment would coincide with the sale of the book, the restriction clearly does not arise from the employee's leaving the firm. That is the only conclusion to be drawn given the fact that no restrictions were made in the restrictive covenant section regarding an employee's termination under other possible circumstances. No provisions are made for the event of an employee's leaving after buying the house's share of the book.[5] More importantly, the agreement contains no restrictions arising from the event presently before us, namely that of an employee's leaving Stone & Edwards without purchasing or selling the other party's share of the book. Accordingly, we must conclude that the parties only intended to protect Stone & Edwards from the competition of a former employee if that employee sold his part of the book to Stone & Edwards. Because the factual allegations in the amended complaint do not make such a claim, we must grant the demurrer on grounds that the allegations will not make recovery possible.

We now turn to Stumpf's objection to the claim of unjust enrichment. The demurrer in this instance will also be sustained. In the amended complaint Stone & Edwards avers that it provided Stumpf with the opportunity to develop "customers and potential customers throughout the time of defendant's employment with plaintiff, at a value of $154,368.42."[6] (Complaint—

---

5. It would be conceivable that no restrictive covenant would be necessary under this condition if it were not for the ambiguousness of the restrictions on competition in this section. The restrictions could be extended to include other customers besides those in the producer's book.

6. This figure is reached by using the following directive in the compensation section: "In the event producer wishes to leave, house

para. 29.) Stone & Edwards then alleges that Stumpf has "become unjustly enriched at plaintiff's expense by" that amount. (Complaint—para. 31.)

Stumpf challenges the viability of this action by contending that Stone & Edwards has not pleaded the elements necessary to prove unjust enrichment. These include allegations that plaintiff conferred certain benefits on defendant, defendant appreciated or realized the benefits, defendant accepted the benefits, and that under the circumstances, "it would be inequitable for defendant to retain the benefit without payment of [their] value." *Feingold v. Pucello,* 439 Pa. Super. 509, 514, 654 A.2d 1093, 1095 (1995) (J. Beck, concurring). The essential issue in such claims is whether the defendant has been unjustly enriched. Accordingly, plaintiff must show that defendant wrongfully secured or passively received a benefit under such circumstances that it would be unconscionable to retain it without payment. *Id.* See also, *Chesney v. Stevens,* 435 Pa. Super. 71, 77 n.4, 644 A.2d 1240, 1243 n.4 (1994). (There must be a finding of "enrichment" and "injustice" would result "if recovery for the enrichment is denied.") In this case, Stumpf argues, the benefits conferred on him by Stone & Edwards were those that any employee would receive for generating profits for the employer. Stone & Edwards, defendant avers, received those profits in the form of its 50 percent share of Stumpf's book. Accordingly, Stumpf concludes, this count should be dismissed.

We agree. In *Aulenbach v. Jones,* 115 Dauph.Co.Rep. 384 (1996), this court dismissed a similar claim when

---

agrees to sell producer its 50 percent share of the business for two times the annual commission produced by its share over the past 12 months . . . ." (Agreement—section 5.)

an employee and officer of a corporation brought an action in unjust enrichment against other officers of the business. Plaintiff/employee did not allege that while he was in defendants' employ he never received a salary or bonus for his work. Accordingly, this court found no basis for the allegations that defendants were unjustly enriched by Aulenbach's efforts. The court pointed out that case law requires "the benefit to the defendant" to be "substantial and obvious." *Id.* at 393, quoting *Chesney, supra* at 79, 644 A.2d at 1244.

In this case, Stone & Edwards alleges that Stumpf received the benefit of resources provided by plaintiff to develop an insurance business. Plaintiff does not, however, claim that during the time of Stumpf's employment Stone & Edwards did not, in return, receive its share of the commissions from the new business apparently generated by the efforts of both defendant and plaintiff. Stone & Edwards contends that the 100 percent share of commissions that Stumpf now enjoys is a benefit conferred by the plaintiff because of the opportunities it previously gave Stumpf. We find, however, that such benefits are neither substantial nor obvious. Having left the employ of Stone & Edwards, Stumpf is no longer the recipient of any benefits given by plaintiff. Accordingly, the allegations will not support a claim in unjust enrichment.

For the foregoing reasons we enter the following

## ORDER

And now July 3, 1996 plaintiff's preliminary objections are overruled. Defendant's preliminary objections are sustained, and Count III and Count IV are dismissed.