# Knoblauch Inc. v. Singer

C.P. of Berks County, no. 99-12199.

*Edwin L. Stock,* for plaintiff.
*David M. Kozloff,* for defendants.

SCHAEFFER, *S.J.,* January 29, 2001—On January 12, 2001, plaintiff appealed the judgment entered in the above-captioned matter in favor of the defendants, Henry D. Singer and Bernard R. Singer d/b/a Northgate Business Center and against plaintiff Knoblauch Inc.

This dispute arises over a 5 percent real estate broker's commission that plaintiff alleges it is entitled to pursuant to an agreement between the defendants and the plaintiff on account of the sale of four parcels of property at Northgate Business Center, Muhlenberg Township, Berks County, Pennsylvania, to Yeager Supply Inc.

Plaintiff, Knoblauch Inc., is a Pennsylvania professional corporation and licensed real estate broker under the Pennsylvania Real Estate Licensing and Registration Act, with its office located at 619 Walnut Street, Reading, Berks County, Pennsylvania.

Defendants, Henry D. Singer and Bernard R. Singer d/b/a Northgate Business Center, are adult individuals who have their business address at Singer Equipment Company, 3030 Kutztown Road, Reading, Berks County, Pennsylvania, and are partners in the partnership known as Northgate Business Center.

Plaintiff began this action on October 17, 1990, by the filing of its complaint. Defendants filed their answer with new matter on January 14, 1991. Plaintiff filed its reply on January 24, 1991. Pursuant to stipulation of counsel, the court granted plaintiff leave to file an amended com-

plaint alleging that plaintiff is a licensed real estate broker under the Pennsylvania Real Estate Licensing and Registration Act, which defendants admitted; defendants were not required to file an answer. Plaintiff filed its amended complaint on August 22, 1991, seeking damages for breach of contract and, alternatively, for damages on quantum meruit.

A jury trial commenced on July 11, 2000. On July 13, 2000, the court directed a verdict in favor of the defendants and against the plaintiff on both counts of plaintiff's complaint. Plaintiff timely filed its motion for post-trial relief and praeciped the motion for argument court on November 6, 2000. The matter was rescheduled and the court heard argument on November 15, 2000.[1] On December 13, 2000, the court denied plaintiff's post-trial motion. Plaintiff timely filed its appeal to the Superior Court.

In its statement of matters complained of on appeal, plaintiff asserts:

"(1) The court erred/abused its discretion when it determined that the contract between plaintiff Knoblauch Inc. and defendants Henry D. Singer and Bernard R. Singer, doing business as Northgate Business Center, was an illegal contract and therefore not enforceable and directed a verdict in defendants' favor on Knoblauch Inc.'s breach of contract claim.

---

1. The 120 day time limit for the court's decision, provided for under Pa.R.C.P. 2227.4(1)(b), was waived by agreement of the parties, and the prothonotary was directed not to enter judgment in this matter until the court rendered its decision on the post-trial motion.

"(2) The court erred/abused its discretion when it concluded that plaintiff Knoblauch Inc. had not proved its quantum meruit claim with sufficient specificity to permit the claim to be submitted to the jury and directed a verdict in defendants' favor on plaintiff's quantum meruit claim.

"(3) The court erred/abused its discretion when it refused to grant a directed verdict in favor of plaintiff Knoblauch Inc. despite the fact that plaintiff proved with certainty that defendants breached their contract with Knoblauch Inc. and owed Knoblauch Inc. the sums sought at trial."

At the close of all the evidence, the trial judge may direct a verdict upon the oral or written motion of any party. Pa.R.C.P. 226(b). In deciding a motion for a directed verdict, the court must view the evidence presented in the light most favorable to plaintiff and determine whether plaintiff failed to prove his case as a matter of law. *Ravin Inc. v. First City Co.,* 692 A.2d 577, 582 (Pa. Super. 1997).

Plaintiff first asserts that it was error for the court to determine that the contract was illegal and therefore not enforceable. We disagree. The Pennsylvania Supreme Court, in *American Association v. Casualty Reciprocal,* 527 Pa. 59, 588 A.2d 491 (1991), states that *"whenever* it appears that the enforcement of a contract would violate public policy, the court should dismiss the proceedings of its own motion . . . the courts of this Commonwealth will not be used to enforce contracts which violate public policy; such contracts are void and the law will have nothing to do with them." *Id.* at 68, 588 A.2d at 496. (emphasis in original) "As a general rule, an agree-

ment which violates a statutory provision, 'or which cannot be effectively performed without violating [a] statute, is illegal, unenforceable, and void ab initio.' " *Watrel v. Commonwealth, Dept. of Education,* 88 Pa. Commw. 1, 5, 488 A.2d 378, 381 (1985) (citation omitted), *aff'd,* 513 Pa. 61, 518 A.2d 1158 (1986).

Plaintiff asks this court to enforce a listing agreement without a termination date. We find that this would violate public policy. Joel Knoblauch is a licensed real estate broker, licensed by the State of Pennsylvania. (Notes of testimony, July 12, 2000, p. 93.) He was a licensed real estate broker at the time the agreement at issue was entered into. *Id.* Knoblauch was aware of the real estate regulations governing his profession; in fact, he testified that back in 1986, he sent a confirming letter to the defendants after a discussion about commissions because "that was in accord with the real estate regulations which say if you have an oral discussion about commissions, you should confirm it in writing." *Id.* at pp. 98-99.

A principal purpose of the Real Estate Licensing and Registration Act, 63 P.S. §§455.101-455.902, is "to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the [real estate] business." *Kalins v. Commonwealth, State Real Estate Commission,* 92 Pa. Commw. 569, 577, 500 A.2d 200, 203 (1985). RELRA establishes rules and regulations governing the profession of real estate brokers and provides for fines and penalties for violations of the Act. The law requires that RELRA be "liberally construed to effect [its] object." *Kalins* at 577, 500 A.2d at 203, citing 1 Pa.C.S. §1928(c). We found as a matter of law that RELRA applied to the

present case and should be used to determine the validity and legality of the February 7, 1989 agreement between plaintiff and defendants.

It is the licensed real estate broker's obligation, under RELRA, to put a definite termination date in any listing. Under section 455.604 of RELRA, it is a prohibited act to fail "to specify a definite termination date that is not subject to prior notice in any listing contract." 63 P.S. §455.604(a)(10). RELRA does not define what constitutes a "listing contract."

We find the document in question is a "listing contract." Black's Law Dictionary, 943 (7th ed. 1999) defines, under real estate "listing," also termed "listing agreement," five types of listings: exclusive-agency, general, multiple, net and open listing. A listing is generally defined as "an agreement between a property owner and an agent, whereby the agent agrees to try to secure a buyer or tenant for a specific property at a certain price and terms in return for a fee or commission." An open or general listing agreement allows rights to be given to more than one agent at a time and obligates the owner to pay a commission when a specified broker makes a sale.

We found that, to form a "listing contract," all that was required was that a real estate broker and the owner of the property form an agreement in which the owner places the property with the broker who, in turn and in prospect for a commission, agrees to attempt to find a buyer. At the time the February 7, 1989 agreement for the five percent commission was signed, Henry Singer informed Knoblauch that the asking price for the property was $750,000, but that Singer required a net price of $650,000 after all fees and realtor commissions were paid.

(N.T., pp. 132-33.) Following these instructions, Knoblauch attempted to secure Yeager Supply as a buyer of the property by quoting a price of "close to a million dollars." *Id.* at p. 231. Knoblauch made repeated attempts to market the property and Yeager Supply was not the only potential buyer to whom he was trying to sell Singer's property. *Id.* at pp. 323-26.

We liberally construed RELRA to effect its purpose. The writing describing the arrangements in this case, the February 7, 1989 agreement, between Henry Singer and Joel Knoblauch for a five percent commission in the event of the conclusion of the sale of Singer's lots with Knoblauch's prospect, Yeager Supply (plaintiff's exhibit 6), fit the definition of a "listing contract" and brings it under RELRA. While it can be characterized as an open listing agreement, it is a "listing contract" nonetheless. We decide this as a matter of law.

Further, a licensed real estate broker knows a listing agreement when he sees, or in this case, writes one. Joel Knoblauch himself established by his admissions that exhibit 6 is a listing. Knoblauch called Henry Singer and asked him if he could have a listing for two more names [the two new prospects, Yeager Supply and Cumberland Management] and Singer agreed. (Notes of testimony, 7/11/00, pp. 42-43.) Then Knoblauch hand-delivered, to Singer, plaintiff's exhibits 6 and 7. *Id.* Knoblauch, in response to the question of whether the only two prospects he had in February of 1989 that he had registered with Northgate were Cumberland Management and Yeager Supply, testified that "[t]hey were the two new listing contracts." *Id.* at p. 157. Knoblauch, a licensed real estate broker, referred to the agreements entered into in

February 1989 as listings on at least two occasions. We will not permit him to retract his admissions in order to try to get this court to enforce an illegal agreement. Also, we will not buy the argument that there was no termination date in exhibit 6 because it was Henry Singer who failed to write one in. It was Knoblauch's duty to do so, not Singer's.

Appellant next alleges that it was error or an abuse of discretion to conclude that it did not prove its quantum meruit claim with sufficient specificity to permit the claim to be submitted to a jury. This argument is without merit.

Quantum meruit is an equitable remedy. *Feingold v. Pucello,* 439 Pa. Super. 509, 512, 654 A.2d 1093, 1094 (1995). A cause of action in quasi-contract for quantum meruit, a form of restitution, is made out where one person has been unjustly enriched at the expense of another. *Mitchell v. Moore,* 729 A.2d 1200, 1202 n.2 (Pa. Super. 1999), citing *Feingold, supra* at 512, 654 A.2d at 1095. Therefore, a claim of quantum meruit raises the issue of whether a party has been unjustly enriched, and in order to prove such a claim, a party must successfully prove the elements of unjust enrichment. *Id.* The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Mitchell, supra* at 1203.

Before we addressed the merits, we noted that plaintiff and defendants' relationship was based on a series of written agreements. Where such an express contract exists on the very issue of commission, no quantum meruit/

unjust enrichment recovery is permitted. *Coldwell Banker Phyllis Rubin Real Estate v. Romano,* 422 Pa. Super. 319, 329-30, 619 A.2d 376, 381-82 (1993).

Plaintiff failed to establish the correct measure of damages to sustain its claim for unjust enrichment. The correct measure is the benefit conferred on the defendant, not the cost to the plaintiff. Plaintiff failed to establish the value of the benefit conferred on the defendants. It asserts that the rate of five percent of the gross sale price set forth in the written contract between the parties could have been considered as a proper measure of the value of the plaintiff's services by the jury had the issue been presented to the jury. This is not the proper measure of damages in a claim for unjust enrichment.

Further, we found that the plaintiff had unclean hands, which would preclude an equitable remedy. The whole point of RELRA is to avoid precisely the sort of situation Knoblauch brings to the court. In the case of *Feingold v. Pucello,* 439 Pa. Super. 509, 654 A.2d 1093 (1995), the Superior Court began its analysis of that case by noting that the plaintiff, a personal injury attorney, came to the court "with hands smudged by the ink which should have been used to sign his fee agreement." In *Feingold,* the attorney sued his client in quantum meruit for a contingency fee for work on the client's case. The Superior Court held that Feingold's abject failure to comply with Pa.R.C.P. 202,[2] which required attorneys to state their contingency fee in writing before or within a reasonable

---

2. This rule was in effect at the time of suit, and later rescinded because it duplicated Rule 1.5(b) of the Rules of Professional Conduct.

time after commencing representation, precluded any equitable recovery. *Id.* at 512, 654 A.2d at 1095.

By analogy, we found that Knoblauch's hands were likewise smudged with the ink that should have been used to put a definite termination date in his listing agreement with the defendants. Under RELRA, this prohibited act potentially subjects him to the possible suspension or revocation of his professional license or registration certificate or for the imposition of fines not exceeding $1,000, or both. Section 455.604(a). We found that he was not entitled to the remedy of quantum meruit because of his own conduct.

Therefore, we found that appellant could not recover on quantum meruit for four reasons:

"(1) it could not recover because the relationship between the parties was based on a series of written agreements;

"(2) it could not recover because it failed to sustain its burden of proving the proper measure of damages for unjust enrichment;

"(3) it could not recover by trying to use an illegal contract to show the value of services rendered; and

"(4) it could not recover because of unclean hands on the part of the licensed real estate broker who failed to put a definite termination date in the listing contract in violation of RELRA."

Finally, appellant asserts that the court erred by not granting a directed verdict in favor of plaintiff despite the fact that it proved with certainty that defendants breached their contract and owed Knoblauch Inc. the sums sought at trial. The court did not grant the motion

for a directed verdict on the breach of contract claim because we determined, as a matter of law, that the contract was illegal and void ab initio, for the reasons previously stated.

For the foregoing reasons, we respectfully request that the Superior Court affirm the judgment entered in this matter.