

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-2009

# Essex Ins Co v. RMJC Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4528

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Essex Ins Co v. RMJC Inc" (2009). *2009 Decisions.* Paper 2065.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2065

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4528

ESSEX INSURANCE COMPANY

v.

RMJC, INC.;
STARLIGHT MANAGEMENT COMPANY

RMJC, Inc.,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 01-cv-04049
(Honorable Harvey Bartle III)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 20, 2008

Before: SCIRICA, *Chief Judge*, RENDELL, *Circuit Judge*, and
O'CONNOR, *Retired Associate Justice**

(Filed on January 07, 2009)

OPINION OF THE COURT

---

*The Honorable Sandra Day O'Connor, Retired Associate Justice of the Supreme
Court of the United States, sitting by designation.

SCIRICA, *Chief Judge*.

RMJC, Inc. appeals from a judgment in favor of the plaintiff, Essex Insurance

Company, which had issued RMJC a commercial general liability insurance policy.

RMJC operates the Show and Tel Show Bar, an adult nightclub, and was found liable in

Pennsylvania state court for injuries suffered on an outside stairway by patron Mark

Jaworski. The state court determined Jaworksi's injuries occurred as a result of his

removal from the club after an altercation with its security personnel, also known as

bouncers. The District Court declared Essex had no duty to indemnify RMJC against the

state-court judgment and ordered RMJC to reimburse Essex for the $410,315.15 it had

paid to satisfy the judgment. RMJC contends the District Court erred as a matter of law

in finding Essex had no duty to indemnify. RMJC argues further that even if Essex was

not obliged to pay the state-court judgment, it is not entitled to restitution for amounts it

voluntarily paid. For the following reasons, we will affirm.[1]

## I.

This case is before us for a second time. A more complete description of the facts

can be found in our previous decision, in which we reversed the District Court's grant of

summary judgment in favor of RMJC. *Essex Ins. Co. v. Starlight Mgmt. Co.*, 198 F.

---

[1] The District Court exercised jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

App'x 179 (3d Cir. 2006) (non-precedential). The parties' dispute centers on an

exclusion provision in the insurance policy:

> This insurance does not apply to any claim, suit, cost or expense arising out
> of:
> . . .
> Assault and/or Battery or out of any act or omission in connection with the
> prevention or suppression of such acts, whether caused by or at the
> instigation or direction of any Insured, Insured's employees, patrons or any
> other person.

The District Court originally granted summary judgment for RMJC on the ground that

Jaworski's successful state-court action pursued only negligence claims, which are

covered under the insurance policy. But because the state-court jury was not asked to

consider whether there was an assault, we determined the jury's finding was not

conclusive as to whether the policy exclusion applied. We vacated the summary

judgment order and remanded for further factual development. After a hearing, the

District Court found Essex had "proven by a preponderance of the evidence that

Jaworski's injuries at the Show and Tel . . . arose out of an assault and battery and that

there was 'but for' causation between the assault and battery and his injuries."

Accordingly, it held the insurance policy did not cover the state-court judgment and

awarded Essex restitution for having earlier paid the judgment on RMJC's behalf.[2]

---

[2] Under a reservation of rights, Essex defended RMJC in the state-court tort action and in unsuccessful appeals. Essex satisfied the state-court judgment after the Pennsylvania Supreme Court denied a petition for allowance of appeal and while this declaratory judgment action was pending in District Court. The original judgment was for $350,000,

(continued...)

## II.

### A.

RMJC identifies five ways in which the District Court purportedly erred as a matter of law in declaring Essex had no duty to indemnify its insured against Jaworksi's injuries.[3] None of its contentions have merit.

First, RMJC claims the District Court erred by construing the term "arising out of" in the insurance policy exclusion to refer to "but for" causation rather than proximate causation. In RMJC's view, this interpretive difference could be dispositive because a policy excluding from coverage only those injuries that are proximately caused by assaults will indemnify more broadly than a policy excluding from coverage any injury for which an assault is a "but for" cause. Under Pennsylvania law, which both parties agree governs our interpretation of the insurance policy, ambiguous policy provisions are to be construed against the insurer. *Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004). Pointing to cases in which Pennsylvania courts have construed "arising out of" to mean "but for" causation where it describes the injuries or claims *covered* by an insurance policy, RMJC argues that where, as here, the same phrase describes *exclusions* from coverage, it should be construed against the insured to mean proximate causation.

---

[2](...continued)
but Essex paid an additional $60,315.15 in delay damages and other costs. *See* Pa. R. Civ. P. 238.

[3] We exercise plenary review over a district court's conclusions of law. *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 530 F.3d 269, 273 (3d Cir. 2008).

The flaw in RMJC's argument is that "arising out of" is not an ambiguous term. "Where . . . the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Id.* RMJC does not identify a single case in which "arising out of" has been interpreted in terms of proximate causation. In fact, courts applying Pennsylvania law have held the phrase denotes "but for" causation both where it defines what is included in coverage *and* where it delineates exclusions. *See, e.g., Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109-10 (Pa. 1999). The District Court construed the phrase correctly.

Second, RMJC contends the District Court improperly relied on the state-court conviction of Terrence Benson, one of RMJC's security guards, for assaulting Jaworksi on the night in question. RMJC notes that Jaworski's injuries occurred when he fell (or, as the District Court concluded, was thrown down) the stairs, whereas Benson was convicted for earlier conduct inside the premises. In RMJC's view, Benson's assault could not be the proximate cause of Jaworski's injuries.

Insofar as RMJC's argument hinges on a proximate causation standard, it misinterprets the language of the insurance policy, as explained above. Moreover, Benson's conviction is not the only evidence on which the District Court's judgment rests. On the basis of testimony from several witnesses, the District Court determined Jaworski was assaulted both inside the club and on the stairway. It did not find—nor,

given the language of the policy exclusion, did it need to find—that Benson himself committed the assault on the stairway.

Third, RMJC asserts the District Court erred in applying the assault exclusion without finding a specific intent on the part of any actor to harm Jaworski. According to RMJC, an exclusion for assault requires a finding of actual subjective intent on the part of the alleged assailant to cause not just the act but also the resulting injury; inferring intent from conduct is impermissible. But all of the cases cited by RMJC in support of this proposition involve insurance policy language excluding coverage only for harm that is specifically expected or intended by the insured. *See Aetna Life & Cas. Co. v. Barthelemy*, 33 F.3d 189 (3d Cir. 1994) (bodily injury or property damage "expected or intended by any insured"); *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457 (3d Cir. 1993) (bodily injury or property damage "expected or intended by an insured"); *Greenfield*, 855 A.2d 854 (injuries "expected or intended by the insured"); *Mohn v. Am. Cas. Co. of Reading*, 326 A.2d 346 (Pa. 1974) ("intentionally self inflicted injury"); *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982 (Pa. Super. 1986) (bodily injury or property damage "expected or intended by the insured"). The exclusion provision at issue here contains no such language, and RMJC cites no cases indicating that specific intent to cause harm is a required element of the tort of assault. On the contrary, Pennsylvania courts have applied assault and battery exclusions without inquiring into the assailant's specific intent. *See, e.g.*, *Acceptance Ins. Co. v. Seybert*, 757 A.2d 380 (Pa. Super. 2000);

6

*Britamco Underwriters, Inc. v. Grzeskiewicz*, 639 A.2d 1208 (Pa. Super. 1994). The District Court's judgment requires only a finding—which the court made—that Jaworski's injuries arose out of an assault, not a determination of a particular actor's specific intent to inflict those injuries.

RMJC's final two allegations of error relate to the fact that the District Court did not identify the specific assailant(s) who caused Jaworski's injuries. First, RMJC argues the exclusion would not apply if the assailant(s) was not an RMJC employee because RMJC's state-court liability was predicated only on the acts of its employees, not the acts of other parties. Second, RMJC contends the exclusion would not apply if the actor(s) who was negligent for purposes of the state-court judgment was distinct from the actor(s) who assaulted Jaworski. It is true that the District Court did not determine who assaulted Jaworski, but the applicability of the exclusion does not depend on the identity of the assailant. The exclusion applies as long as an assault was a "but for" cause of Jaworski's injuries. It is irrelevant whether the assailant was an RMJC employee, a patron, or neither. Nor does it matter whether the assailant was also the negligent party for purposes of the state-court judgment, so long as the assault was a "but for" cause of the injuries for which RMJC was held liable. The District Court determined Jaworski was assaulted not only inside the club but also on the stairway—indeed, it determined he was actually thrown down the stairs. This is a more than sufficient basis for the District Court's conclusion that an assault was a "but for" cause of Jaworski's injuries. Accordingly, the

7

District Court properly held Essex had no duty to indemnify RMJC against the state-court judgment.

**B.**

RMJC argues that regardless of whether Essex had a duty to indemnify, it is not entitled to restitution of the money paid to satisfy the state-court judgment against RMJC. Generally, a party can obtain the equitable remedy of restitution "where the claimant [can] show that a benefit was wrongfully secured or passively received, and that it would be unconscionable for the party receiving the benefit to retain it without payment. . . . We must focus not on the intention of the parties but on the extent [to which] the enrichment is unjust." *Burgettstown-Smith Twp. Joint Sewage Auth. v. Langeloth Townsite Co.*, 588 A.2d 43, 45 (Pa. Super. 1991). The District Court found RMJC was unjustly enriched by Essex's payment of the state-court judgment against it, since, as discussed above, Essex was not obligated to indemnify RMJC.

RMJC's argument that restitution is unavailable in this case rests on two different doctrinal grounds. First, RMJC notes that restitution is not available where an express contract governs the parties' obligations. The District Court endorsed this general principle but determined it did not apply here, since the insurance contract was silent on the question of reimbursement for unobligated payments.[4] We agree. A plaintiff is not

---

[4] RMJC notes that the contract does provide for reimbursement of the deductible amount in the event Essex pays to settle a claim or suit, but as the context makes clear,

(continued...)

8

foreclosed from seeking restitution by the mere existence of a contract with the defendant, but only where the plaintiff has an "*alternative right* on an enforceable contract." 26 Richard A. Lord, *A Treatise on the Law of Contracts* [*Williston on Contracts*] § 68:5 (4th ed. 2003) (emphasis added). For example, "[w]hen [a] non-breaching party elects to sue on [a] contract, ordinary contract rules limit compensatory damages to his expectancy interest, even if this measure of relief fails to disgorge the breacher's profits." *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 621 (E.D. Pa. 2003); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) ("[W]here the contract 'fixes the value of the services involved,' there can be no recovery under a *quantum meruit* theory."). But where, as here, the terms of the contract do not address the compensation owed to a plaintiff for a particular benefit conferred on the defendant, the plaintiff may obtain restitution if the defendant would be unjustly enriched by retaining that benefit. RMJC does not dispute that it was unjustly enriched by Essex's payment of its liability to Jaworski.

RMJC's second argument against restitution presents a closer question. RMJC contends Essex cannot recoup the amount of the state-court judgment because it paid the judgment voluntarily under a mistake of law. Pennsylvania courts do not appear to have

<hr>

[4](...continued)
that provision applies in circumstances where the claim or suit falls within the scope of coverage. It cannot reasonably be read as foreclosing reimbursement in all other circumstances, including those in which Essex has no obligation to indemnify.

decided whether the voluntary payment doctrine precludes recovery of insurance indemnity payments.

> When there is no Pennsylvania Supreme Court decision directly on point, we are charged with predicting how it would resolve the question at issue. In order to do so, we must take into consideration (1) what the Pennsylvania Supreme Court has said in related areas, (2) the decisional law of the Pennsylvania intermediate courts, (3) federal cases interpreting state law, and (4) decisions from other jurisdictions that have discussed the issue.

*Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 436 (3d Cir. 2006).

Pennsylvania courts have endorsed the general doctrine prohibiting recovery for voluntary payments made due to a mistake of law. In *Acme Mkts., Inc. v. Valley View Shopping Ctr., Inc.*, for example, the Pennsylvania Superior Court held the plaintiff, a tenant of a shopping center, could not recover payments it had made to its landlord for maintenance of the parking lot. 493 A.2d 736 (Pa. Super. 1985). The plaintiff contended it had made the payments because it mistakenly believed it had a continuing contractual obligation to maintain the lot, when, in actuality, its lease required maintenance contributions only during an initial term. The court observed that "[i]f this interpretation was erroneous, the mistake was one of law. Payments made pursuant to a mistake of law cannot be recovered." *Id.* at 738.

In an earlier case, we predicted the Pennsylvania Supreme Court would not allow an insurer to recover the cost of defending an insured if it was later determined the insurer had no duty to do so. *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219-20 (3d Cir. 1989). We reasoned that "[a] rule permitting such recovery would be inconsistent

10

with the legal principles that induce an insurer's offer to defend under reservation of rights" because such a rule would effectively require the insured "to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation." *Id.* Similarly, a district court has held that an insurer could not recover a payment made to settle a malpractice suit. *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 140 F. Supp. 2d. 461 (E.D. Pa. 2001). In that case, prior to the settlement payment, the underlying malpractice suit in state court had been stayed pending the outcome of the federal action determining whether the insurer had a duty to defend and indemnify.

Notwithstanding this case law, we are confident the Pennsylvania Supreme Court would allow Essex to recover its indemnity payment. "The rule disallowing recovery when payments have been made under a mistake of law is supported as a corollary of the criminal law maxim that one is presumed to know the law and that to hold otherwise would render legal accountability unenforceable." *Acme*, 493 A.2d at 737. Consistent with this rationale, "[t]he voluntary payment defense . . . is inapplicable when money is paid by a person without 'full knowledge of the facts.'" *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 937 A.2d 503, 514 (Pa. Super. 2007).

Essex's payment falls into this excluded category. Essex was obliged to defend RMJC in state-court proceedings that resulted in an adverse judgment. *Essex Ins. Co. v. RJMC, Inc.*, No. 01-4049, 2002 WL 32348287 (E.D. Pa. Jan. 17, 2002). Essex's payment

11

of that judgment, unlike the plaintiff's payment in *Acme*, was not due to a misinterpretation of contractual language. Essex knew it had no obligation to indemnify RMJC against injuries arising out of an assault. Indeed, it was litigating its liability in federal court on the basis of that proper understanding of the contract. The important question to be resolved was factual: whether Jaworski's injuries were caused by an assault. To answer that question, the District Court had to make credibility determinations and evaluate witness testimony as to disputed facts. Essex's uncertainty over how the court would resolve those key factual issues is a far cry from cases where plaintiffs made payments under mistakes of pure law. *See*, *e.g.*, *Home Ins. Co. v. Honaker*, 480 A.2d 652 (Del. 1984) (denying insurer's claim for recovery of overpayments made to insured in mistaken belief that policy limit was $25,000, rather than actual limit of $10,000).

Policy considerations also weigh in favor of allowing recovery of indemnity payments in cases like this one. Courts are mindful of the potential conflict of interest that lurks wherever insurers undertake the legal defense of their insureds. In some instances, permitting insurers to seek restitution would exacerbate those conflicts. For example, as *Terra Nova* and *Coregis* recognized, allowing restitution for an insurer's defense or settlement costs risks altering the incentives the law has created for insurers to provide vigorous and effective defenses.

12

This incentive structure would not be disrupted by permitting an insurer exhaustively to defend its insured under a reservation of rights, pay a resultant judgment, and then litigate its duty to indemnify. As the District Court observed, Essex's satisfaction of the state-court judgment protected the interests of all relevant parties. It ensured Jaworski suffered no further delay in receiving the compensation to which he was entitled. It also ensured neither Essex nor RMJC would have to pay the additional post-judgment interest that would have accrued while they litigated the issue of indemnity. Indeed, RMJC appears to miss the irony that it reaped this very benefit in this case, but would not have under the rule it urges. Under its proposed rule, Essex would almost certainly have declined to pay the judgment for fear of foreclosing its ability to seek restitution. RMJC would then have been saddled with a significantly larger debt to Jaworski once Essex was adjudged to have no duty of indemnification.[5]

Furthermore, unlike the insured in *Honaker*, RMJC was plainly on notice at the time of the payment that Essex disputed its obligation to indemnify. *Honaker*, 480 A.2d at 653, 655. This federal action was then pending, and both parties have since litigated it energetically. Awarding restitution to Essex therefore works no unfairness to RMJC,

---

[5] The District Court attributed this hypothetical additional liability to delay damages, but these do not accrue after "the date of the award, verdict or decision." Pa. R. Civ. P. 238(a)(2). But post-judgment interest would have continued to accumulate at a rate of six percent per year. 42 Pa. Cons. Stat. § 8101; 41 Pa. Cons. Stat. § 202. Essex satisfied the state-court judgment no later than April 2005. If the judgment had remained unpaid up until now, it would have increased by more than $70,000.

13

which could not have reasonably changed its position in reliance on Essex's payment. Precluding recovery, on the other hand, would create inefficient incentives and disserve the interests of insurers, insureds, and injured third parties.[6]

Accordingly, we will affirm the District Court's judgment.

---

[6] Because we find the bar on recovery of voluntary payments does not apply in these circumstances, we do not address Essex's contention that this argument has been waived.