590 A.2d 4

**Mary Susan VAN BUSKIRK, Appellant,**

v.

**Gary J. VAN BUSKIRK, Appellee.**

Supreme Court of Pennsylvania.

Submitted Dec. 3, 1990.
Decided April 24, 1991.

Raymond P. Kashimba, Stroudsburg, for appellant.

Robert H. Nothstein, Stroudsburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

McDERMOTT, Justice.

Appellant Mary Susan Van Buskirk (wife) and appellee Gary J. Van Buskirk (husband) were married on September 1, 1972. One child, Jessica, was born of their marriage on June 21, 1975. The parties separated in April, 1982 and in November, 1982, wife filed a complaint seeking a divorce, equitable distribution of marital property, alimony, counsel fees, and costs. In accordance with Pa.R.C.P. No. 1920.51, a divorce master was appointed by the Monroe County Court of Common Pleas. On September 24, 1986, the master conducted a hearing during which husband, wife and husband's parents, Jean Van Buskirk and Roe Van Buskirk, testified. Thereafter, the master filed a report pursuant to which he recommended that: (1) the divorce be granted on grounds that the marriage was irretrievably broken; (2) wife be denied alimony and counsel fees; (3) each party pay their own costs; and (4) husband pay wife the sum of $18,066.78 as settlement of her equitable distribution claim in connection with the marital residence (more specifically described hereinafter). The trial court adopted the master's recommendation *in toto* and entered an order adopting the recommendation. Husband appealed to the Superior Court, contesting only the equitable distribution portion of the common pleas court order. The Superior Court reversed and wife petitioned this Court for allowance of appeal. 378 Pa.Super. 418, 548 A.2d 1270. We granted allocatur to explore the equitable distribution issue. The underlying relevant facts are as follows.

During the first six (6) years of their marriage, husband and wife lived in various rental properties. At the urging of husband's parents, in 1978 the couple agreed to take up residence on a 1.89 acre tract of land situate in Hamilton Township, Monroe County (property), which property was

part of a larger tract owned by husband's parents and on which the parents' residence was situate.

In December, 1978, the husband's parents caused a deed to be prepared pursuant to which they would transfer the property to husband and wife for a recited consideration of $1.00. On December 29, 1978, at a pre-arranged meeting among husband, wife and husband's parents at the office of a notary public, the deed was properly executed, acknowledged and notarized, and a Realty Transfer Tax Affidavit was signed by husband and notarized. Husband and wife testified that the $1.00 consideration was paid, while the father denied that this payment was made. After execution, the deed was retained by the father and never recorded. In or around May, 1981, when husband and wife were having marital problems, the father, without the knowledge or consent of husband and wife, destroyed the deed. Wife testified that when she left the notary public's office, she thought the husband had the deed with him. She also testified that she always believed that the property was her's and her husband's from and after the date the deed was signed. In addition, husband and wife both testified that there were numerous discussions prior to the execution of the deed during which husband's parents advised husband and wife that the property was going to be gifted to the couple. In anticipation of and in preparation for the transfer of the property, husband and wife commissioned a surveyor to survey the property and prepare a plan of subdivision, both of which were completed prior to the execution of the deed.

At the time the deed was executed, the property was vacant. Shortly thereafter, construction of a residence on the property was commenced. The construction was financed primarily by two bank loans ($21,100.00 and $3,939.00) obtained by husband's parents and secured by a mortgage on all of the parents' property including the 1.89 acre tract which is the subject of the instant dispute. Husband and wife jointly designed the residence and husband and father did most of the physical labor needed to

construct the home, with the wife helping with painting, decorating, wallpapering and general unskilled interior work.

At some point in 1979 or 1980 (the record is unclear), construction of the residence, although unfinished was sufficiently complete to permit husband, wife and child to reside therein. The family remained in the residence until April, 1982, when the wife separated from husband, taking the child with her. Thereafter, husband only sporadically occupied the marital residence. Construction, which had slowed after the family moved in, came to a complete stop at the time of the separation. While occupying the property, husband and wife made monthly payments to the parents which fluctuated in amounts based on the amounts due from the parents on the aforesaid construction loans, which had variable interest rates. The wife testified that she thought the monthly payments, which were made by check or in cash by the husband to the parents, were mortgage payments. The husband's father testified that he considered the monthly payments to be rent payments. The father also testified that, throughout the entire period, he and his wife paid the taxes and insurance on the disputed property. The divorce master determined the value of the marital residence (including the 1.89 acre plot upon which the house is situate), as of the date of separation, as $55,000.00 less encumbrances of $18,866.45 for a net equity of $36,133.55.

The divorce master in determining what was marital property and how it should be distributed was necessarily compelled to examine the legal and equitable status of the marital residence and the land upon which it is situate. The master determined that under either a gift analysis or a contract analysis, equitable title to the property was conveyed by husband's parents to husband and wife in December, 1978, even though the parents retained legal title. The trial court adopted the master's determination that "a gift was intended and completed"; it did not address the master's contract analysis. In reaching its decision, the court

relied primarily on *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986), which had a similar fact pattern to the case *sub judice* with one critical difference. In the *Wolf* case, a husband's parents purportedly gifted the marital residence to husband and wife even though legal title remained in the parents. The trial court in *Wolf,* which was affirmed by the Superior Court, held that although the parents held legal title, the married couple held equitable title under theories of resulting trust and unjust enrichment (the couple had made mortgage payments and improved the property). In the *Wolf* case, however, the parents were joined as parties to the action and "were free to present evidence and were afforded the same protections as had the claims for resulting trust and unjust enrichment been maintained separately." *Wolf, id.,* 356 Pa.Superior Ct. at 370, 514 A.2d at 904. Such was not the situation in the case *sub judice,* where the parents were not joined in the action.

The question then becomes whether the parents were indispensable parties to the equitable distribution portion of appellant's action. "A party is indispensable when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience." *Hartley v. Langkamp and Elder,* 243 Pa. 550, 555, 90 A. 402, 403 (1914). *See,* also *Columbia Gas Transmission Corp. v. Diamond Fuel Co.,* 464 Pa. 377, 379, 346 A.2d 788, 789 (1975) ("In Pennsylvania, an indispensable party is one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights, and his absence renders any order or decree of court null and void for want of jurisdiction.")

In the instant case, it is clear that any judicial determination regarding title to the subject property, whether legal or equitable, would seriously affect the rights of the parents, creating such a cloud on title as to effectively prevent a sale, rental or mortgaging of the property. Moreover, with regard to appellee, the trial court's order requiring him to

pay appellant one-half of the net value of the property without a concomitant finding, binding upon the parents, that the property is his would be "wholly inconsistent with equity and good conscience." *See Hartley v. Langkamp and Elder*, 243 Pa. at 555, 90 A. at 403. Accordingly, the parents were and are indispensable parties to this action.

Indeed, the Divorce Code and our Rules of Civil Procedure anticipated and made provision for the type of situation in which husband and wife find themselves. Section 301 of the Code confers jurisdiction on the trial court to adjudicate, in addition to the direct marital disputes between the couple, disputes involving "[a]ny other matters pertaining to such marriage and divorce or annulment authorized by law and which fairly and expeditiously may be determined and disposed of in such action." 23 P.S. § 301(a)(5). In addition, our Rules, in the Divorce section, provide a mechanism for the courts to direct that such indispensable parties be added. The Rules provide, in pertinent part, as follows: "At any state of an action, the court may order the joinder of any additional person who could have joined or been joined in the action and may stay the proceedings in whole or in part until such person has been joined." Pa.R.C.P. No. 1920.34. The Note to the aforesaid Rule contemplates the exact circumstances of the instant case, i.e., "The joinder of persons other than husband and wife may be essential in claims ... where persons other than the parties have an interest in property which is the subject matter of a distribution."

In the instant case, it is essential that husband's parents be joined so that the ultimate disposition of the subject property will be wholly consistent with equity and good conscience. The Superior Court, in reviewing the trial court in the instant case, recognized the critical distinction between this case and the *Wolf* case. However, instead of directing that the indispensable parties be added, the Superior Court, in the nature of an advisory opinion, determined that husband's parents did not intend to gift the property. Based on that determination and a consideration of the

untenable position of appellee, the court modified the trial court's order by vacating the portion of it dealing with equitable distribution. That decision was an incorrect remedy to the problem. For a proper resolution of the equitable distribution issue between husband and wife, the husband's parents must be joined as parties. Therefore, we are ordering that this case be remanded to the trial court, directing the court to add husband's parents as parties to the action to determine the respective rights of all concerned in the marital residence. *See* Pa.R.C.P. No. 1920.34. Also, we find that the use of a master in determining the rights of third parties in a divorce-related action is not generally authorized under the Rules. *See* Pa.R.C.P. No. 1514. Accordingly, the trial court shall conduct a *de novo* hearing, disregarding the master's factual findings and legal analysis regarding the marital residence. In this regard, we are overruling *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986) to the extent it determined that the use of a master was permissible in a third party divorce-related action proceeding under theories of resulting trust and unjust enrichment.

Accordingly, the order of the Superior Court is vacated and the case is remanded to the trial court for proceedings consistent with this opinion including, if appropriate, fashioning a new equitable distribution and/or alimony award.

FLAHERTY, J., files a dissenting opinion.

FLAHERTY, Justice, dissenting.

I join in that part of the majority's opinion which remands the case to the trial court for joinder of the husband's parents as parties, but dissent to that portion which rejects Superior Court's holding that a master may be used to conduct the proceeding. As Superior Court held in *Wolf v. Wolf,*

Rule 1920.51 of the Pennsylvania Rules of Civil Procedure clearly provides:

(a)(1) The court may hear the testimony or, upon its own motion or the motion of either party, *may appoint*

*a master with respect to all or any of the matters* specified in subdivision (a)(2)(i) to hear the testimony and return the record and transcript of the testimony to the court, together with a report and recommendation. Pa.R.C.P. 1920.51(a)(1) (emphasis added). This provision obviously allows that all actions for divorce or claims which may be joined with the action for divorce or any aspect of the action or claims may be referred to a master.

356 Pa.Super. 365, 371, 514 A.2d 901 (1986). Not only is Superior Court plainly correct, but it is my view that we should be encouraging, not discouraging of the use of masters in the trial courts.

The function of masters, in the words of Rule 1920.51, is "to hear the testimony and return the record and a transcript of the testimony to the court, together with a report and recommendation." Upon the receipt of these materials from the master, the trial court then, with the opportunity for advocacy being afforded, reviews the record and recommendation and issues its order. This system allows the trial court to review and judicially act on the record, providing a much needed method whereby our courts can greatly maximize efficiency.