**Sherri GRAVES, Appellant**

v.

**Rodney GRAVES, Appellee.**

**No. 11–FM–0729.**

District of Columbia Court of Appeals.

Submitted April 10, 2012.

Decided Sept. 6, 2012.

522

Clarissa Thomas Edwards was on the brief for appellant.

Rodney Graves filed a brief pro se.

Before THOMPSON and EASTERLY, Associate Judges, and TERRY, Senior Judge.

EASTERLY, Associate Judge:

This case is a corollary to *Gore v. Gore*, 638 A.2d 672 (D.C.1994). In *Gore*, we examined the breadth of a trial court's statutory authority to equitably distribute marital property in a divorce proceeding[1] when one of the spouses holds legal title to that property with a parent. We held that where the parent had been properly joined as a party to the action, the trial court could determine if the parent held bare legal title in constructive trust for the spouse who was not named on the deed

and, if so, could order the equitable distribution of the entire property. *Id.* at 676. Here we are presented with similar facts— one of the divorcing spouses, the wife, holds legal title to the marital home with her father—with one important distinction: the father was not joined as a party in the divorce proceeding. We must now determine whether the trial court could distribute the entire equity in the marital home in the father's absence. We hold that the trial court could not. Indeed, under the circumstances, the father was an indispensable party under Superior Court Domestic Relations Rule 19. Thus, the trial court had an independent obligation to join him to the action. Accordingly, we reverse and remand this case for the trial court to join the wife's father and to determine whether the equitable distribution of the marital home must be recalculated. We reject appellant's remaining claim on appeal.

## I. Facts

Mr. and Ms. Graves were married and purchased a house in the District of Columbia in 1997. The couple lived there with their three children until they separated in 2007. Mr. Graves subsequently filed for divorce, and in January 2011 a two-day hearing was held to determine the distribution of the marital assets.

During their testimony, Mr. and Ms. Graves provided conflicting accounts, both of questionable propriety and often confusing, regarding the purchase and ownership of the marital home. The confusion was exacerbated by the documentary evidence, or lack thereof. The original 1997 deed to the marital home was not entered into evidence by either party. Rather, the parties stipulated to the admission of two deeds notarized a year later on the same

1. D.C.Code § 16–910 (2001).

day, March 23, 1998, by the same notary. These deeds revealed that Calvin Jones, Ms. Graves's father, had some connection to the property.

One of the 1998 deeds stated that Ms. Graves and Mr. Jones granted the marital home to Mr. and Ms. Graves as tenants by the entirety; this deed was not recorded. The other 1998 deed stated that Mr. and Ms. Graves granted the marital home to Ms. Graves and Mr. Jones as joint tenants; this deed was recorded. The parties provided different explanations for the existence of these two deeds.

Ms. Graves testified that she and her father had initially bought the marital home together in 1997. She explained that the first 1998 deed was executed to briefly place the marital home in her and Mr. Graves's name in order to help Mr. Graves secure a loan, and that the second 1998 deed was then executed to transfer title back to her and her father. Ms. Graves also testified that she and her father had paid the mortgage on the marital home for the duration of the marriage. In addition, she presented a 2001 bill for unpaid property taxes on the marital home from the District addressed to her and Mr. Jones and a homeowner's policy naming her and Mr. Jones as the owners of that property. Mr. Graves did not contest this evidence, although he had a different explanation as to why Mr. Jones was nominally connected to the property.

Mr. Graves testified that Mr. Jones had co-signed with Ms. Graves for a Federal Housing Administration loan to purchase and renovate the property in 1997 when Mr. Graves could not because he had already obtained one such loan and was not eligible for a second. He suggested that he had somehow subsequently assumed Mr. Jones's legal title to the property, although he never clearly explained how this occurred. And he asserted that the 1998 deeds were executed in the opposite sequence—that the initial 1998 conveyance was from Ms. Graves and him to Ms. Graves and her father to help the married couple refinance the mortgage after the house was renovated, and that the final 1998 conveyance was to him and Ms. Graves.[2]

Mr. Jones was not called to testify, but both parties were questioned about his absence. On cross-examination, counsel for Mr. Graves asked Ms. Graves to explain why she had not called her father to corroborate her testimony, and she explained that she did not want her father and Mr. Graves "to have animosity between the two of them." Nothing in the record indicates that Mr. Jones had been given notice of the proceedings.

Sorting through the conflicting testimony, the trial court found that "the last conveyance of the marital home was from [Ms. Graves] and [Mr. Graves] to [Ms. Graves] and her father." The court noted that "the last recorded deed on the property is in [Ms. Graves's] name and her father's name. She and her father helped [Mr. Graves] to obtain a loan by putting his name on the deed before [Mr. Graves] transferred his interest in the property to [Ms. Graves's] father." Ms. Graves does not challenge this finding on appeal.[3]

---

2. Ms. Graves's counsel elicited an admission from Mr. Graves on cross-examination, however, that he had not listed the marital home as an asset on a bankruptcy petition he filed in 2002.

3. Mr. Graves, by contrast, does appear to challenge this finding. In his brief, he asserts that the last conveyance of the marital home was from Mr. Jones and Ms. Graves to him and Ms. Graves. However, the document on which Mr. Graves seeks to rely to establish this fact was never introduced into evidence, nor could it have been: it is a copy of the 1998 conveyance from Mr. Jones and Ms.

Although it determined that Mr. Jones, and not Mr. Graves, held legal title to the marital home as a co-tenant with Ms. Graves, the court found that Mr. Graves "had an equitable interest in the marital home ... because he provided most of the financial resources to pay the mortgage and maintenance on said property." The trial court then determined that Mr. and Ms. Graves each were entitled to an equal, 50% interest in the house. To permit the divorcing couple to realize the benefit of that interest, the court ordered them to select an appraiser and to execute the necessary papers to sell the marital home by September 1, 2011.[4] In the alternative, the court ordered that "one party shall pay his or her equitable interest in the property, 50%, of the now current appraised value of the property to the other party no later than October 1, 2011, if that party desires to own the marital home...." The trial court never addressed how it could dispose of the total equity in the marital home in light of Mr. Jones's legal title, as a co-tenant, to the property.

## II. Analysis

The trial court found that Mr. Jones was a co-owner of the marital home with his daughter, Ms. Graves, but it then purported to distribute the entire equity in this property without hearing from Mr. Jones. Ms. Graves argues on appeal that this action was unauthorized. We agree.[5]

The Superior Court has broad authority to distribute marital property in the course of dissolving a marriage. *See, e.g., Barnes v. Sherman,* 758 A.2d 936, 939 (D.C.2000) ("[T]his court has consistently applied the well-settled principle that the trial court has considerable discretion and broad authority in distributing marital property as part of a judgment of divorce.") (alteration in original) (citations and internal quotation marks omitted). But its power does not extend to property that third parties own (in whole or in part), when those parties are not before the court. And to the extent the trial court determines that the third party merely holds bare legal title to the property in constructive trust[6] for one or both of the divorcing spouses, it may not make that determination in the absence of the third party. Accordingly, Mr. Jones was entitled to his day in court to explain the nature of his interest in Mr. and Ms. Graves's marital home, and the trial court could not

---

Graves to him and Ms. Graves that was recorded on July 27, 2011, *after* the trial court distributed the marital property in this case. In any event, Mr. Graves did not file a cross-appeal from the trial court's order challenging the court's findings of fact regarding who held legal title to the property. *See Mass. Mut. Life Ins. Co. v. Ludwig,* 426 U.S. 479, 480, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976) ("[A] party who does not appeal from a final decree of the trial ... may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary[.]").

4. From what we can discern from the Superior Court docket, the house had not even been put on the market as of June 2012. Even if it has been sold, there remains a live question regarding Mr. Jones's entitlement to a share of the proceeds.

5. Ms. Graves cursorily raises one other argument on appeal, namely, that the trial court erred in calculating the value of two other marital properties, arguing that Mr. Graves attempted to shelter those properties by selling them to family members for far less than their fair market value. Because Ms. Graves did not present any evidence at trial regarding the fair market value of those properties, we hold that the trial court properly found this claim to be without merit.

6. "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it." *Gray v. Gray,* 412 A.2d 1208, 1210 (D.C.1980) (citation and internal quotation marks omitted).

distribute the entire equity in the marital home without hearing from him.

We are guided to this conclusion by our decision in *Gore* and Superior Court Domestic Relations Rule 19 governing joinder of indispensable parties.

*Gore* presented similar facts—one of the spouses (the husband) held legal title to the marital home as a joint tenant with a parent (his mother), 638 A.2d at 673—but with one important difference. In *Gore*, unlike this case, the court joined the husband's mother as a party to the divorce proceeding. *Id.* The case came to us on appeal because, although the trial court determined that the wife had a 50% equitable interest in the marital property, *id.* at 674, it also ruled that her mother-in-law's half ownership in the property was "inviolate," *id.* at 673. Thus, the trial court awarded the wife only 25% of the estate (50% of the husband's 50% ownership interest). *Id.* at 674.

On appeal, we reversed. We held that under the equitable distribution regime for marital assets set forth in D.C.Code § 16-910, the trial court had broad power to distribute property acquired in a marriage. We further held that the husband's mother's interest could be distributed to the husband and wife, notwithstanding the husband's mother's legal title, because the evidence established that she held the property in constructive trust for the wife. *Id.* at 674–76. In reaching this latter conclusion, we emphasized that the husband's mother "is a party to the case." *Id.* at 675. Focusing on this fact, we noted that:

> No contention has been made before this court that she was not properly joined. She is represented by counsel and she has had an opportunity to be heard in the trial court and in this court as well. Indeed, she was "free to present evidence and [was] afforded the same protections as [if] the claims for resulting trust and unjust enrichment [had] been maintained separately."

*Id.* at 675–76 (quoting *Van Buskirk v. Van Buskirk*, 527 Pa. 218, 590 A.2d 4, 7 (1991)) (alterations in original). "Under these circumstances," we held "the trial judge was not precluded from distributing as marital property the entire equity" in the marital home. *Id.* at 676; *see also id.* ("Once the husband's mother was made a party to the divorce action and had an opportunity to assert her rights, there was no legal impediment precluding the court from dealing with her legal interest in the home.").

■ The reasoning of *Gore* compels the complementary rule: absent joinder of a third party having concurrent ownership in the marital home, the trial court may not order distribution of the entire equity in the property. Moreover, a trial court may not presume in the third party's absence that the property is held in constructive trust for one or both of the divorcing parties.[7] Indeed, this was the conclusion of the Supreme Court of Pennsylvania in *Van Buskirk*, a case we relied on in *Gore*.

In *Van Buskirk*, the court was asked to determine the legitimacy of the trial court's distribution of the marital home, owned by the absent parents of one of the spouses, in light of *Wolf v. Wolf*, 356 Pa.Super. 365, 514 A.2d 901, 905 (1986) (spouse's parents, who were joined, were found to hold legal title to the marital home in constructive trust for the divorcing couple). Noting the parents' absence as "the critical distinction between this case and the *Wolf* case," and remarking

---

**7.** A contrary rule would raise due process concerns. *See* Brett R. Turner, *Division of Third–Party Property in Divorce Cases*, 18 J. Am. Acad. Matrim. Law. 375, 422–23 (2003) ("There would be a fundamental violation of due process if ownership of third-party property were litigated in a binding manner without giving the owner a chance to appear and assert his or her rights.").

that "it is clear that any judicial determination regarding title to the subject property, whether legal or equitable, would seriously affect the rights of the parents, creating such a cloud on title as to effectively prevent a sale, rental or mortgaging of the property," the court vacated judgment and remanded the case to join the parents as indispensable parties. *Van Buskirk*, 590 A.2d at 7, 8.[8]

In addition to case law, we rely on Domestic Relations Rule 19, which exists for just this sort of situation to ensure that all parties who need to be are before the court. This rule provides that in proceedings in the District's Domestic Relations branch, the trial court, "upon motion of a party or of its own initiative[,] ... shall order the joinder of all indispensable persons and may ... [do so] at any stage of the action and on such terms as are just." Super. Ct. Dom. Rel. R. 19. The rule further provides that "[i]f a[n indispensable] person cannot be made a party and the Court determines that in equity the action should not proceed among the parties before it, the Court shall dismiss the action." *Id.*

An "indispensable person" is not defined in the Domestic Relations Rules; however, the corresponding rule in the Superior Court Rules of Civil Procedure provides a more extensive treatment of joinder principles.[9] Civil Rule 19(a) specifies that a person is a necessary party, who is required to be joined "if [f]easible," if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Super. Ct. Civ. R. 19(a). Under Civil Rule 19(b), a required party may become "indispensable" if the trial court is unable to join that party. To determine if an absent party is indispensable, the court weighs four criteria similar to those it considered under Rule 19(a), but which focus on the ultimate prejudice to all concerned. These factors are: (1) the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already parties"; (2) "the extent to which, by protective provisions in the judgment,

---

**8.** Scholarship in this area confirms that precluding the distribution of property owned in part by a third party in that party's absence is the general rule. *See* Turner, *supra* note 7, at 422 & n. 144 ("When third-party claims are litigated in the divorce case, the third person is not bound by the result unless he or she is joined as a party.") (citing *In re Marriage of Sammons*, 642 N.W.2d 450, 457 (Minn.Ct. App.2002); *Daetwyler v. Daetwyler*, 130 N.C.App. 246, 502 S.E.2d 662 (1998), *aff'd per curiam*, 350 N.C. 375, 514 S.E.2d 89 (1999)); *Marital Home Titled in Parents' Names*, 14 Equitable Distribution J. 109, 111 (1997) ("If the marital home is titled in the names of one spouse's parents, the trial court may not award the other spouse an interest in the home or otherwise affect the parents' property rights unless they are joined in the litigation.") (citing *De Armas v. De Armas*, 471 So.2d 185 (Fla.Dist.Ct.App.1985); *Huener v. Huener*, 110 Ohio App.3d 322, 674 N.E.2d 389 (1996); *Van Buskirk* ).

**9.** The Domestic Relations Rules directs Family Court judges to look to Superior Court Rules of Civil Procedure, "[i]f no procedure is specifically prescribed" in the Domestic Relations Rules. Super. Ct. Dom. Rel. R. 1(d). We likewise deem it appropriate to use the Civil Rules to supplement the meaning of otherwise undefined terms in the corresponding Domestic Relations Rules.

by the shaping of relief, or other measures, the prejudice can be lessened or avoided"; (3) "whether a judgment rendered in the person's absence will be adequate"; and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." [10] Super. Ct. Civ. R. 19(b).

Under the criteria set forth in Civil Rule 19, Mr. Jones was an indispensable party, under Domestic Relations Rule 19, to Mr. and Ms. Graves's property distribution proceeding. As a preliminary matter, Mr. Jones was a necessary party under Civil Rule 19(a). One hundred percent of the marital home could not be disposed of in his absence. *See* Super. Ct. Civ. R. 19(a)(1). Indeed, such a disposition would have "as a practical matter impair[ed] or imped[ed] [his] ability to protect that interest," Super. Ct. Civ. R. 19(a)(2)(i), and would have left Mr. and Ms. Graves "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest," Super. Ct. Civ. R. 19(a)(2)(ii), because Mr. Jones could have declined to consent to carry out the trial court's order with respect to the property—or, even if he had agreed to the sale, he could have sued Mr. and Ms. Graves for his share of the proceeds.

Mr. Jones was also an indispensable party to the action under Civil Rule 19(b) because a judgment in his absence stood to prejudice either him or the divorcing couple.[11] A divorce decree distributing 100% of the equity in the marital home (as the trial court in fact ordered) prejudiced Mr. Jones by depriving him of his potential interest in the property without an opportunity to be heard. But had the court attempted to fashion "protective provisions in the judgment" to protect Mr. Jones, Mr. and Ms. Graves would have been prejudiced. Super. Ct. Civ. R. 19(b). Indeed, because Mr. Jones's equitable interest in the property was unquantified (and unquantifiable in his absence), the only way the court could have adequately protected his interest would have been to leave the marital home out of the distribution of marital assets; but this would have left the disposition of marital assets incomplete. In short, there was no way to completely and fairly resolve this case without Mr. Jones.[12]

In light of this analysis under Civil Rule 19, we conclude that Mr. Jones was an indispensable party under Domestic Relations Rule 19. Thus, the court had an

**10.** The comment to Domestic Rule 19 suggests essentially the same criteria—"(1) the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder"—and further advises that "[s]hould a joinder issue arise which is not otherwise addressed, reference should be made to the applicable civil rule."

**11.** Although the determination that a party is indispensable under Civil Rule 19 requires one result—dismissal—we do not suggest that

dismissal was required in this case. Rather, we conclude that the trial court had an independent obligation at least to try to join Ms. Graves's father, and, failing that, was required under Domestic Relations Rule 19 to assess whether the case could proceed "in equity."

**12.** Like the court in *Gore*, we deem it "not good judicial husbandry," 638 A.2d at 676 (citation and internal quotation marks omitted), to direct the trial court on remand simply to distribute the portion of the marital home to which Ms. Graves holds legal title and leave to a separate proceeding a determination whether Mr. Jones holds his legal title in constructive trust such that his ownership share may also be distributed to the divorcing parties. It is inefficient use of judicial time

obligation to join Mr. Jones, on "its own initiative," Super. Ct. Dom. Rel. R. 19, to determine what actual interest, if any, Mr. Jones held in that property.[13]

Accordingly, we remand to the trial court to join Mr. Jones in this litigation. Assuming Mr. Jones can be joined, the court must then determine whether he has an interest that must be accounted for in the distribution of marital assets or whether he holds nothing more than bare legal title in the property, such that the entire equity may be distributed to the divorcing pair. In the first scenario, both Mr. and Ms. Graves's share of the property must be equally reduced, but in the latter scenario the trial court's fifty-fifty distribution of the entire estate may stand. In other words, although Ms. Graves has presented a meritorious issue on appeal, our purpose in remanding this case is to vindicate Mr. Jones's rights, not hers. The trial court

acted within its discretion when it determined that Mr. and Ms. Graves were entitled to equal shares of the marital home, and we do not disturb that aspect of the trial court's ruling. Ms. Graves had ample opportunity to present facts relevant to her interest in that property, and did so. Moreover, Ms. Graves could have subpoenaed and called her father to testify, if she believed that he possessed facts that would influence the trial court's determination of her equitable share in the marital home. Nothing entitles her to re-litigate that issue.[14]

The order appealed from is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

and resources to hold successive proceedings, when all claims may be resolved in a single action. Moreover, equitable distribution of marital assets often depends upon the total marital assets, and this way of solving third-party claims through subsequent proceedings leaves the domestic court's assessment of the total marital assets incomplete. *See* Turner, *supra* note 7, at 426.

**13.** We acknowledge that the parties did not make it easy for the trial court in this case to discern that an indispensable party was missing and required joinder. The issue of Mr. Jones's ownership interest in the marital home was not raised pretrial. And at trial, Mr. and Ms. Graves presented conflicting and rather convoluted accounts of the property's ownership, only worsened by incomplete documentary proof. Thus, the trial court could not and did not determine that Ms. Graves and Mr. Jones held legal title to that real estate until after the close of evidence. But once the trial court made this determination, it could not proceed without affording Mr. Jones an opportunity to be heard. It is immaterial that neither Mr. nor Ms. Graves objected to Mr. Jones's absence; their interests were not aligned with his. Moreover, the text

of the Domestic Relations Rule 19 explicitly requires that a trial court join an indispensable party "of its own initiative," and there is broad consensus among courts interpreting the counterpart Rule 19 of the Federal Rules of Civil Procedure (virtually identical to the District's rule) that even where "[t]he indispensable party issue was not raised in the trial court or by the parties on appeal .... courts and commentators generally agree that this issue is not waivable[.]" *Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel,* 883 F.2d 890, 892–93 (10th Cir.1989) (citing cases); *see also Weisberg v. U.S. Dept. of Justice,* 631 F.2d 824, 830 & n. 40 (D.C.Cir.1980) (where neither party seeks to join a necessary party, "the district court has an independent responsibility to assure the just and final resolution of civil disputes" and the "court of appeals should take steps 'on its own initiative' to fulfill Rule 19 policies") (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)).

**14.** By the same token, nothing in this opinion entitles Mr. Graves to re-litigate legal title to the marital home or his equitable share of this property vis-a-vis Ms. Graves.