J-A16022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DANA LEE CARMEN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GARY JOHN CARMEN | |
| Appellant | No. 1236 WDA 2015 |

Appeal from the Order July 21, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 08-7066-004

BEFORE: SHOGAN, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 15, 2016**

Appellant, Gary John Carmen ("Gary"), appeals from the order entered on July 21, 2015. After careful consideration, we conclude that the trial court lacked subject matter jurisdiction over this dispute because an indispensable party was not joined in the action. Accordingly, we are constrained to vacate the order and dismiss the petition.

The relevant factual background and procedural history of this case is as follows. In 1979, Gary's parents, Fred Carmen ("Fred") and Ida Rose Carmen ("Ida"), along with several other individuals, formed VECA Land Development Corporation ("the Corporation"). In June 1985, Gary married Dana Lee Carmen ("Dana"). At the time of Gary and Dana's marriage, Gary did not have an ownership interest in the Corporation. In 1994, the Corporation merged into VECA Land Development, A Pennsylvania Business

* Retired Senior Judge assigned to the Superior Court

Trust ("VECA").[1]  According to the parties, VECA issued 4,000 shares of stock,[2] of which Fred and Ida owned 2,100 shares.

In 2003, Fred died and his interest in VECA passed to Ida.  In November 2006, Janet and David Wingrove ("the Wingroves") acquired all VECA shares not owned by Ida.  According to Dana, in December 2006, Ida

---

[1] Neither party, nor *amici*, cite to VECA's trust instrument (as it existed in 2006 and/or 2014) or the merger documents relating to the Corporation's merger with VECA.  These documents are critical to determining exactly what must occur for the interest of a trust beneficiary to be transferred to another individual.  The parties left this issue largely unaddressed before the trial court, making only very brief references to the trust instrument during trial and in Gary's post-trial brief.  **See** Gary's Post-Trial Brief (Doc. No. 124), 1/2/15, at 3-4; N.T., 5/6/15, at 77.

The absence of these documents in the certified record prevents us from addressing certain jurisdictional arguments and from providing more direction to the trial court.  Specifically, it is impossible to determine if VECA is an indispensable party, as it argues in its *amicus curiae* brief, without a copy of the above referenced documents.  **Cf. In re Saint Catherine Hosp. of Pennsylvania, LLC**, 2012 WL 5177751, *1 (Bankr. M.D. Pa. Oct. 18, 2012) (holding that a Pennsylvania business trust can be a party to an action even though the more prudent course may be to join the trustees of the trust); **Marin v. Leslie**, 2008 WL 4238961, *4–5 (W.D. Pa. Sept. 10, 2008), *aff'd as modified*, 337 F. App'x. 217 (3d Cir. 2009) (holding that a Pennsylvania business trust can be a party to an action).

Moreover, it is difficult for us to understand how or why VECA adopted the Corporation's bylaws without amendment thereto.  Those bylaws, which all parties and the trial court rely upon, are clearly meant for a corporation, not a business trust formed pursuant to 15 Pa.C.S.A. § 9501 *et seq*.  If the trial court is called upon to address these same issues again, we recommend that the trust instrument and merger documents be admitted into evidence in order to determine if VECA is an indispensable party as well as ruling on the merits of the parties' dispute.

[2] We note that it is more likely that VECA issued shares of beneficial interest and not shares of stock.

transferred her 2,100 VECA shares to Gary and Dana. The trial court found that in January 2007, Gary and Dana then purported to transfer ten shares of VECA stock to the Wingroves.[3] The trial court also found that, over the ensuing seven years, Gary and Dana acted as though they owned at least 2,000 VECA shares.[4]

On January 10, 2008, Dana filed a complaint in divorce. On July 6, 2011, the parties entered into a marital settlement agreement ("MSA") which resolved the outstanding equitable distribution issues. Included within that MSA was the statement that:

> It is believed [Dana and Gary] currently own 2,100 shares of stock in VECA and the parties shall take all steps necessary pursuant to the [bylaws] of VECA to divide equally the shares of stock between them, such that each party receives a [c]ertificate[] for 1,050 shares and said action shall be ratified by VECA.

MSA (Doc. No. 46),[5] 7/6/11,[6] at 2. On August 19, 2011, the trial court entered a decree of divorce dissolving the matrimonial bond between Gary

---

[3] Gary and Dana intended to transfer 100 shares; however, due to a clerical error, they only purported to transfer ten shares.

[4] Specifically, Gary assumed responsibility for paying VECA's taxes and both Gary and Dana served as VECA officers.

[5] For the convenience of this Court, the trial court, and the parties, when possible we parallel cite to the document number assigned by the Allegheny County Department of Court Records.

[6] Although the MSA was signed on July 1, 2011, it was not filed of record until July 6, 2011. Throughout this memorandum, we cite to the date a
*(Footnote Continued Next Page)*

and Dana. The trial court incorporated the MSA into the divorce decree. *See* Divorce Decree (Doc. No. 52), 8/19/11, at 1.

On September 10, 2014, there was a special meeting of VECA's shareholders. The individuals present at the meeting were Gary, Ida, Gary's new wife, Joan Carmen ("Joan"), and the Wingroves. Dana was not informed of the meeting and thus did not attend. During the meeting, Ida purported to transfer 2,000 VECA shares to Gary and 100 VECA shares to the Wingroves. She asserted that, in December 2006, she did not transfer her 2,100 VECA shares to Gary and Dana. That same day, Gary purported to transfer his 2,000 VECA shares to himself and Joan as tenants in the entireties.

On October 10, 2014, Dana filed a petition seeking specific performance of the portion of the MSA relating to division of the VECA shares. After a six-day hearing, over the course of six months, on July 22, 2015, the trial court found in favor of Dana and ordered Gary to surrender one-half of his interest in VECA to Dana. The trial court also awarded Dana attorney fees in accordance with the MSA. This timely appeal followed.[7]

_____

*(Footnote Continued)* ————————————

document was entered on the docket and not the date it was signed or issued.

[7] On August 26, 2015, the trial court ordered Gary to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On September 16, 2015, Gary filed his concise statement. On October 27, 2015, the trial court issued its Rule 1925(a) opinion.

*(Footnote Continued Next Page)*

- 4 -

After Gary filed his notice of appeal, Joan filed a declaratory judgment action against VECA, the Wingroves, Gary, and Dana ("the civil action"). In the civil action, Joan seeks a declaration that she, along with Gary, as tenants in the entireties, own 2,000 VECA shares. That case was transferred to the trial judge who presided over Dana's petition seeking specific performance of the MSA. On April 25, 2016, the parties to the civil action entered into a consent order pending disposition of the instant appeal.

Gary presents three issues for our review:

1. Whether the [t]rial [c]ourt lacked subject matter jurisdiction . . . due to [Dana's] failure to join [] indispensable part[ies] . . . ?

2. Whether the [t]rial [c]ourt erred and/or abused its discretion in finding that the shares at issue were gifted to [Gary and Dana] during th[eir] marriage . . . ?

3. Whether the [t]rial [c]ourt erred and/or abused its discretion [] in finding that [Gary] defaulted under the [MSA] . . . ?

Gary's Brief at 3-4.

_____

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Gary's concise statement fails to comply with Rule 1925(b). A seven-page document of alleged errors is not "concise" and fails to comply with Rule 1925(b). *See Jones v. Jones*, 878 A.2d 86, 89 (Pa. Super. 2005) (finding all issues waived when the appellant filed a seven-page concise statement); *see also Tucker v. R.M. Tours*, 939 A.2d 343, 346–347 (Pa. Super. 2007), *aff'd*, 977 A.2d 1170 (Pa. 2009). Nonetheless, issues of subject matter jurisdiction are non-waivable. *N. Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 28–29 (Pa. Super. 2015) (citation omitted). As we conclude that the trial court lacked subject matter jurisdiction over Dana's petition because of her failure to join Joan as an additional defendant, we decline to address whether waiver is appropriate with respect to Gary's remaining issues.

In his first issue, Gary argues that the trial court lacked subject matter jurisdiction in this matter because of Dana's failure to join Ida and Joan. "The failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction." **N. Forests II, Inc. v. Keta Realty Co.**, 130 A.3d 19, 28–29 (Pa. Super. 2015) (citation omitted). As such, our standard of review is *de novo* and our scope of review is plenary. **See S.K.C. v. J.L.C.**, 94 A.3d 402, 406 (Pa. Super. 2014) (citation omitted).

As this Court explained:

> A party is indispensable when [its] rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation.

**Orman v. Mortgage I.T.**, 118 A.3d 403, 406 (Pa. Super. 2015) (internal alteration, quotation marks, and citations omitted).

When determining if a party is indispensable, this Court proceeds through a four step process. First, we consider if "absent parties have a right or an interest related to the claim[.]" **Martin v. Rite Aid of Pennsylvania, Inc.**, 80 A.3d 813, 814 (Pa. Super. 2013) (citation omitted). If we answer that question in the affirmative, we then examine "what is the nature of that right or interest" and if "that right or interest [is] essential to the merits of the issue" raised in the suit. **Id.** Based upon our answers to

- 6 -

those questions, the ultimate inquiry is whether "justice be afforded without violating the due process rights of absent parties[.]" ***Id.***

We agree with the trial court that Ida is not an indispensable party in this case. Although we are unaware of any appellate case in Pennsylvania addressing whether a transferor of property is an indispensable party, we find persuasive decisions of appellate courts in other jurisdictions.[8] These courts have held that a transferor is not an indispensable party when he or she has parted with all of his or her interest in the property. ***See Estate of Faisao v. Tenorio***, 4 N.M.I. 260, ¶5 n.11 (1995) (citations omitted); ***Emarine v. Haley***, 892 P.2d 343, 348 (Colo. App. 1994) (citation omitted); ***M.R. Bldg. Corp. v. Bayou Utilities, Inc.***, 637 So.2d 614, 618 (La. Ct. App. 1994).

Gary argues that Ida is indispensable because it was not clear throughout the litigation that Ida relinquished all of her VECA shares. This uncertainty during the litigation, however, is irrelevant to our disposition of the jurisdictional question. Our task is to determine whether the trial court possessed subject matter jurisdiction at the time it issued its order granting Dana's petition. As noted above, our scope of review when determining if a party is indispensable is plenary. In other words, we may review the entire record, including the testimony at trial. That record reflects that there is no

---

[8] ***Cf. Bensinger v. Univ. of Pittsburgh Med. Ctr.***, 98 A.3d 672, 682 (Pa. Super. 2014) (decisions from other jurisdictions are persuasive).

dispute regarding the current status of Ida's ownership interest in VECA stock: she no longer owns any VECA stock. If there were a dispute regarding whether Ida currently owned the VECA stock, the trial court could have required Dana to join Ida as an additional defendant. This was unnecessary, however, as the trial court learned that Ida no longer retained any ownership interest in VECA.

Because there is no dispute that Ida relinquished her VECA shares, the only "interest" she has in this litigation is seeing that Dana does not acquire any VECA shares. Such an "interest" is insufficient to make Ida indispensable. The interest required to be an indispensable party is an interest recognized by the Fourteenth Amendment's Due Process Clause. **See Martin**, 80 A.3d at 814. An interest in seeing that a specific individual not own property, after relinquishing one's interest in the property, is not an interest recognized by the Due Process Clause.

Next, we address whether Joan is an indispensable party. As this Court has stated, "in actions intended to affect the title to property which is either held **or claimed** by tenants by the entireties, both spouses are indispensable parties and must be joined." **Miller v. Benjamin Coal Co.**, 625 A.2d 66, 68 (Pa. Super. 1993), *appeal denied*, 641 A.2d 311 (Pa. 1994) (emphasis added). The trial court, however, found that Joan was not an indispensable party because the question raised by Dana's petition was who

possessed valid title to the 2,100 VECA shares in 2011, not who possessed valid title to the 2,100 VECA shares at the time the petition was filed.

We reject the trial court's rationale because the claim affected Joan's claim to title to property, *i.e.*, the VECA shares, that Joan and Gary claimed in the entireties. The issue before the trial court asked whether Ida perfected a transfer to Gary and Dana in 2006 or whether Ida retained her interest in the VECA shares such that she could later transfer them to Gary. These issues heavily implicated the validity of Joan's claim of title to the VECA shares.

The trial court's rationale, which focused exclusively on the sufficiency of Ida's transfer in 2006 and who possessed valid title to the 2,100 VECA shares in 2011, is flawed. Although the question before the court may not involve the current purported owner, the question before the court definitely impacts the current purported owner's, *i.e.*, Joan's, title or claim of title. As the Commonwealth Court recently explained, the purported owner (and his or her spouse if the purported ownership is in the entireties) is an indispensable party to such litigation. **See In re Balaji Investments, LLC**, 2016 WL 5833330, *5 n.4 (Pa. Cmwlth. Oct. 6, 2016), *citing* **Fulton v. Bedford Cnty. Tax Claim Bureau**, 942 A.2d 240, 243 (Pa. Cmwlth. 2008) ("[A] successful purchaser at a judicial sale . . . is an indispensable party in an action to set aside a sale.").

Under the trial court's rationale, the purported current owner of a parcel of land is not an indispensable party to an action seeking to set aside a sheriff's sale from 1940. Under the trial court's rationale, the question in such a case would be whether the sheriff's sale was valid in 1940, and that question does not involve the current purported owner of the land. This rationale ignores a current property owner's obvious interest in the chain of ownership. Clearly, as noted above, the current purported owner has an interest in whether the sheriff's sale was valid and is an indispensable party to the litigation. **See Balaji Investments**, 2016 WL 5833330 at *5 (citation omitted).

The trial court states that the order appealed from does not require Gary to give Dana one-half of the shares gifted to him by Ida in September 2014. This is a correct reading of the order, and the trial court's rationale for this reading is also correct. The trial court determined that the September 2014 gift never occurred because Ida had no VECA shares to gift to Gary after she gifted the shares to Gary and Dana in 2006. We believe that this reasoning puts the proverbial cart before the horse and is inapposite for purposes of determining if Joan is an indispensable party. Indeed, the trial court's invalidation of the September 2014 transfer demonstrates that Joan is an indispensable party. Joan has an interest in whether she owns, as a tenant in the entireties, 2,000 shares of VECA stock or whether she owns no VECA shares. By conducting a trial in which Joan

was unable to call witnesses, cross-examine witnesses, and otherwise present evidence, the trial court's ruling on the merits of Dana's petition denied Joan due process of law as to her property interest in those 2,000 VECA shares.

Dana notes that Joan was keenly aware of the petition to enforce the MSA as her counsel was served with a copy of the petition. Whether Joan was aware of the litigation is of no moment to our jurisdictional analysis. As a non-party to the litigation, Joan had no obligation to intervene in the dispute between Gary and Dana. Furthermore, Gary could not join Joan to the litigation because Gary has no claims against Joan. Instead, it was Dana's obligation, as the individual seeking relief, to ensure that Joan was joined as an additional defendant, either voluntarily or involuntarily.[9] **See** Pa.R.C.P. 2227(b).

We find instructive our Supreme Court's decision in **Van Buskirk v. Van Buskirk**, 590 A.2d 4 (Pa. 1991). In that case, the husband's parents testified at the equitable distribution hearing. **See id.** at 5. The parents testified regarding the status of property which they equitably gifted to the husband and wife but failed to legally gift. Nonetheless, our Supreme Court held that the trial court lacked subject matter jurisdiction over the equitable distribution because the parents were not joined as indispensable parties.

---

[9] Because Dana filed the petition in the original divorce action, Joan could not be an original defendant.

*See id.* at 7-8. The same rationale applies in this case. Although Joan was fully aware of the litigation, she was not joined as an indispensable party. Thus, although Joan's inaction may have frustrated efficient resolution of this dispute, that does not mean we can overlook her absence when determining if the trial court possessed subject matter jurisdiction over Dana's petition for enforcement.

Dana argues that Joan is not an indispensable party because the trial court lacked the authority to modify the MSA. Specifically, Dana argues that section 3105(c) of the Divorce Code prohibits a trial court from modifying a marital settlement agreement. Section 3105(c) provides that, "In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court." 23 Pa.C.S.A. § 3105(c).

Dana's argument fails because section 3105(c) only bars a trial court from modifying an MSA provision "regarding the disposition of existing property rights and interests between the parties[.]" *Id.* In this case, if Gary did not own VECA stock when the parties executed the MSA, then the trial court would not be modifying a provision regarding **existing** property rights and interests because Gary lacked ownership at that time. In other words, if the trial court determines that no transfer occurred in 2006, the

trial court would not be modifying any interest or right conferred by the MSA because the MSA only conferred rights and interests related to the property actually owned by Gary and Dana. Thus, section 3105(c) does not bar the joinder of Joan in this action.

Dana also argues that section 3331 of the Divorce Code bars Gary's collateral attack on the MSA. Section 3331 provides that:

> The validity of a decree of divorce or annulment issued by a court shall not be questioned, except by appeal, in any court or place in this Commonwealth after the death of either party to the proceeding. If it is shown that a party who subsequently attempts to question the validity of the decree had full knowledge of the facts and circumstances later complained of at the time of issuance of the decree or failed to take any action despite this knowledge within two years after the date of the decree, the party shall be barred from questioning the decree, and it shall be valid in all courts and places within this Commonwealth.

23 Pa.C.S.A. § 3331.

Dana's argument fails for two reasons. First, Gary is not attacking the validity of the divorce decree. To the contrary, he agrees that the divorce decree, and thus the MSA, is enforceable. Instead, he argues that the plain terms of the MSA provide that he would only split the VECA stock with Dana if he owned any such stock. Moreover, he argues that even if the trial court's interpretation of the phrase "it is believed" is correct, he cannot turn

over stock he did not own at the time.[10]  These claims are distinct from collateral attacks on the MSA.

Second, Dana's argument is evidence of the indispensable nature of Joan's interest in this action.  If Dana's argument were correct, and Gary's failure to attack the MSA within two years of the divorce decree foreclosed judicial review of the MSA, then Joan could lose her interest in VECA stock without any opportunity to assert her interest.  Instead, Joan would have no process whatsoever, much less due process, to contest whether Ida transferred the VECA stock to Gary and Dana in December 2006.  Such a result violates Joan's right to due process.  Therefore, section 3331 does not relieve Dana of the obligation to join Joan as an indispensable party.  Accordingly, we conclude that in this case Joan is an indispensable party.

In sum, we conclude that Ida does not have an interest in the claim brought by Dana.  As such, she is not an indispensable party.  We conclude, however, that Joan does have an interest in Dana's claim and she is an indispensable party to this litigation.  The trial court therefore lacked subject matter jurisdiction over Dana's petition.  As we conclude the trial court lacked jurisdiction over Dana's petition, we decline to address Gary's

---

[10] There was a dispute at trial regarding the construction of the phrase "it is believed" in the MSA.  Dana argued that the phrase modified the number of shares.  In other words, Dana asserted that the MSA recognizes that she and Gary owned VECA shares but uncertainty existed regarding the number of shares owned.  Gary, on the other hand, argued that the phrase modified the phrase "currently own."  In other words, Gary asserted that there was uncertainty as to whether he and Dana owned any VECA shares.

remaining appellate issues. We vacate the trial court's order granting the petition and, pursuant to Pennsylvania Rule of Civil Procedure 2227(a), we dismiss Dana's petition. ***See Altoona Reg'l Health Sys. v. Schutt***, 100 A.3d 260, 268 (Pa. Super. 2014) (citation omitted).

Order vacated. Petition dismissed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016